**[J-104-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, STEVENS, JJ.**


| | |
|---|---|
| IN INTEREST OF: L.Z., A MINOR CHILD | : No. 26 EAP 2014 |
| | : |
| | : Appeal from the Judgment of Superior |
| APPEAL OF: L.Z. | : Court entered on 04/29/2014 affirming in |
| | : part and vacating in part the Order dated |
| | : 01/06/2012 in the Court of Common Pleas, |
| | : Family Division, Philadelphia County at |
| | : CP-51-DP-0002428-2011, FID: 51-FN- |
| | : 004522-2011 |
| | : |
| | : ARGUED:  November 19, 2014 |


<u>OPINION</u>


**MR. JUSTICE BAER**                    **DECIDED:  March 25, 2015**


We granted review to consider whether the Superior Court exceeded its scope and standard of review in substituting its judgment for that of the trial court in determining whether the child at issue in this case suffered abuse and whether that abuse was perpetrated by his mother.  This inquiry necessarily entails a determination of whether the Superior Court misapplied the Child Protective Services Law's (CPSL) definition of child abuse and whether the court misconstrued the evidentiary presumption of 23 Pa.C.S. § 6381(d), which provides that when a child incurs abuse not ordinarily suffered absent acts or omissions of a parent or other person responsible, the fact of abuse suffices to establish *prima facie* evidence of abuse by the parent or person responsible.  For the reasons set forth below, we reverse.

On December 3, 2011, twenty-one-month-old L.Z. (Child) was brought to Abington Memorial Hospital by L.F., his mother (Mother), and R.F., his maternal-aunt (Aunt), who lived and cared for child together, to be treated for a deep cut nearly halfway around the base of his penis. The physicians also observed a dark bruise in the buckle area (above the jawbone and below the cheekbone) of Child's right cheek and another on his left cheekbone, as well as a severe diaper rash and yeast infection on the front of his body. Notes of Testimony (N.T.), 1/6/12, at 6-7. Child was also unkempt with very dirty legs and feet. N.T. at 14. As discussed below in more detail, the presentation of these injuries was consistent with abuse and inconsistent with several explanations given by Mother and Aunt, which led the treating physicians to suspect that the injuries were non-accidental. The hospital staff filed a report with the Philadelphia Department of Human Services (DHS or Appellant).[1]

After initial emergency proceedings, the court placed the child in protective custody, with physical custody given to Child's maternal grandfather (Grandfather). At an adjudicatory hearing on January 6, 2012, at which Mother was present and represented by counsel but, significantly, did not testify, the court considered DHS's dependency and aggravated circumstances petitions. A caseworker testified that Mother acknowledged at the hospital that she and Aunt were Child's primary caregivers, but claimed that she had been staying with her paramour for the two days prior to the hospital visit, while Child was with Aunt. N.T. at 8. She noted that the Child Protective Services (CPS) report indicated Aunt, rather than Mother, as the perpetrator of the abuse. N.T. at 19.

---

[1] DHS is technically designated an appellee before this Court, presumably because the Superior Court affirmed the trial court's grant of DHS's dependency petition. Although nominally an appellee, DHS files a brief as a "participant" in favor of Child, the Appellant before this Court.

Dr. Deborah Silver, the Medical Director of Abington Memorial's Pediatric Inpatient Unit, who examined Child in the hospital, testified at the adjudication hearing as an expert in pediatric medicine. She opined that Child was abused. N.T. at 46. Regarding the penile laceration, the expert indicated that it was an "extremely uncommon presentation." N.T. at 37. She rejected Aunt's extrajudicial claim that Child caused the laceration when he tugged on his penis during a diaper change; instead, the doctor testified that Child was not strong enough to cause the injury and that the laceration was linear, rather than having jagged edges, which would have been consistent with ripping the skin. N.T. at 39-40. The doctor also opined that Child would have suffered severe pain. N.T. at 37.

Speaking to the bilateral cheek bruising, the doctor testified that it was a "common abuse injury" caused by an adult planting a thumb in one cheek and squeezing the child's face between the thumb and fingers. N.T. at 42. She explained that injuries to the buckle of the cheek are inconsistent with a fall onto a table, as Mother had claimed, which would instead cause injury to the protruding parts of the face such as the cheekbone or orbital area. N.T. at 41. The expert opined that Child's bruises were more than a day but less than a week old. N.T. at 42. Significantly, after detailing the dark bruising and their likely cause, the doctor was asked whether that would "cause a child severe pain," and responded, "I am sure it couldn't have been very comfortable."[2] N.T. at 42.

---

[2] It appears that the trial judge viewed this as an affirmative (if somewhat facetious) response to whether the child suffered severe pain given the court's finding that Child suffered multiple "serious physical injuries." Tr. Ct. Op. at 8 (applying 23 Pa.C.S. § 6303(a)). In contrast, the Superior Court Majority read her response literally to suggest only that the child was not comfortable when his face was squeezed so hard as to cause large, dark bruises that remained days later. It is certainly reasonable to interpret this statement, as the trial court apparently did, to indicate that the child was in severe pain. We discuss this more fully *infra*.

Turning to the yeast infection and diaper rash, the doctor rejected Mother's out-of-court claim that the severe skin condition resulted from sustained diarrhea that did not respond to treatment with diaper rash creams. The doctor explained that Child's rash was inconsistent with diarrhea, which would be on the buttocks area, given that the rash was on Child's front and thighs, which was "usually from being in urine for extended periods of time." N.T. at 42-43. Thus, the doctor testified that the injuries (the penile laceration, cheek bruises and diaper rash/yeast infection) were "consistent with a pattern of suspected child abuse" and that Child was a "victim of child abuse." N.T. at 46-47.

After the hearing, the trial court entered an order finding Child dependent. The court specifically found that it was in Child's best interest to be removed from Mother's home and that preventive services were not necessary prior to the removal because of the need for emergency placement. Significantly, the court found that Child was a victim of child abuse as defined at 23 Pa.C.S. § 6303,[3] and that Mother was the

---

[3]    The trial court relied upon subsections (i), (iii), and (iv) of Section 6303(b), which at the time of the court's decision provided in full as follows:

> (b) Child abuse.--
>
> (1) The term "child abuse" shall mean any of the following:
>
> (i) Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.
>
> * * * *
>
> (iii) Any recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of a child under 18 years of age.
>
> (iv) Serious physical neglect by a perpetrator constituting prolonged or repeated lack of supervision or the failure to

(continued…)

perpetrator of such abuse.  Dependency Order of Jan. 6, 2012.  The court transferred temporary legal custody to DHS and placed Child in Grandfather's physical custody, with Child's parents receiving supervised weekly visitation.  The trial court also entered an order finding that aggravated circumstances existed because Child was "the victim of physical abuse resulting in serious bodily injury, sexual violence, or aggravated neglect by the parent; proven as to Mother."  Aggravated Circumstances Order of Jan. 6, 2012.

--------

(…continued)

> provide essentials of life, including adequate medical care, which endangers a child's life or development or impairs the child's functioning.

23 Pa.C.S. § 6303(b) (prior to revision); see also Tr. Ct. Op. at 7.  "Serious physical injury" was defined as "[a]n injury that: (1) causes a child severe pain; or (2) significantly impairs a child's physical functioning, either temporarily or permanently."  Id. § 6303(a) (prior to revision).

The definition was amended, effective December 31, 2014, to broaden the term "child abuse" significantly.  As relevant to the facts of this case, Section 6303(b) now provides:

> **Child abuse.--**The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> (1) Causing bodily injury to a child through any recent act or failure to act.
>
> * * * *
>
> (5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.
>
> * * * *
>
> (7) Causing serious physical neglect of a child.

23 Pa.C.S. § 6303(b.1).  "Bodily injury" is now defined as "[i]mpairment of physical condition or substantial pain," which is considerably broader than the prior requirement of "serious physical injury."  Id. § 6303(a).  The references in the body of this opinion refer to the prior version of Section 6303 unless specifically noted.

Accordingly, the court concluded that DHS did not need to make further efforts to reunify Child with Mother.

In a subsequent Pa.R.A.P. 1925(a) opinion, the court elaborated that "clear and convincing evidence existed that the Child was without parental care" and that "Child's injuries would not have occurred but for Mother's omissions as his primary caretaker." Tr. Ct. Op. at 6. The court cataloged the following injuries, which it noted were inconsistent with Mother and Aunt's explanations: "an untreated yeast infection and diaper rash from being in urine for extended periods of time," the very deep penile laceration, and the inflicted rather than accidental bilateral cheek bruising "caused by someone grabbing the face and squeezing it between their fingers." Id. at 7. The court then concluded,

> Based on those facts, the Court determined that Mother was the perpetrator of the abuse because the Child was in her care. Whether or not she inflicted the injuries directly was irrelevant. She failed to act and protect the Child from the serious physical injuries he suffered. The medical evidence established that the Child's injuries were consistent with child abuse.

Id. at 7-8. As discussed *infra*, a dependency court's finding that an individual perpetrated abuse allows for the filing of a founded report of child abuse with the Department of Public Welfare and inclusion in the statewide ChildLine Registry, which *inter alia* restricts an individual's ability to engage in employment related to children. See 23 Pa.C.S. §§ 6331, 6338(a), 6344-6344.2, and 6355.

Mother appealed the orders to the Superior Court claiming that the trial court erred in finding that Mother was responsible for the child abuse under 23 Pa.C.S. § 6303. The Superior Court initially entered an opinion of a three-judge panel, affirming the adjudication of dependency but vacating the trial court's determination that Mother was the perpetrator of abuse.

Subsequently, the Superior Court granted the Guardian *ad litem*'s (GAL or Appellant) petition for reargument *en banc*. The *en banc* panel again affirmed the dependency adjudication and vacated the abuse determination, after recognizing that Mother had waived certain issues by voluntarily relinquishing her parental rights to Child prior to reargument.[4] In re L.Z., 91 A.3d 208, 212 (Pa. Super. 2014).

In deciding whether Mother had perpetrated abuse on Child, the court first considered which of Child's injuries constituted abuse. While the trial court viewed the laceration, the cheek bruising, and the diaper rash as abuse, the Superior Court Majority concluded that only the penile laceration was proven by clear and convincing evidence to have resulted from "non-accidental serious physical injury" and therefore constituted child abuse pursuant to Section 6303(b). Id. at 215-16. It rejected labeling the dark bilateral bruising on Child's cheeks as abuse based upon the medical expert's comment that Child "couldn't have been very comfortable." Id. at 215; see *supra* at 3 n.2. Likewise, the court dismissed the yeast infection and severe diaper rash, in part because "it responded well to treatment" in the hospital. Id. at 216.

The panel next considered whether the trial court erred in determining Mother to be the perpetrator of the laceration, the only injury it found to constitute abuse. The court recognized that 23 Pa.C.S. § 6381(d) provides for *prima facie* evidence of abuse in certain situations:

> Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima*

---

[4] Mother initially challenged the trial court's holdings that aggravated circumstances existed and that DHS need not make reasonable efforts at reunification. As Mother waived those claims by voluntarily relinquishing her parental rights, we will not discuss these claims further.

*facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d). In interpreting the statutory section, the *en banc* panel quoted its prior decision in In re J.G., 984 A.2d 541, 547 (Pa. Super. 2009), which stated that Section 6381(d) only applies if the abuse is of such a nature that it "would ordinarily not be sustained or exist except by reason of the acts or omissions [of the person], **and the person is proved to have had responsibility for the welfare of the child at the time of the abuse**." L.Z., 91 A.3d at 216 (emphasis in L.Z.).

The *en banc* Majority emphasized the final phrase of the J.G. quotation regarding "time of abuse." The court looked to prior Superior Court and Commonwealth Court caselaw utilizing the "time of abuse" terminology in cases involving multiple caregivers. In those multiple caregiver cases, some intermediate appellate courts have opined that "[w]here the record is unclear as to which parent or person was responsible for the child at the time of the abuse, 'the viability of the presumption in [§ 6381(d)] is questionable.'" Id. (citing In re J.G., 984 A.2d at 547; C.E. v Dep't of Pub. Welfare, 917 A.2d 348, 356-57 (Pa. Cmwlth. 2007)); but see In the Interest of J.R.W., 631 A.2d 1019 (Pa. Super. 1993) (applying Section 6381(d) presumption in multi-caregiver situation). In multiple caregiver cases, the court continued, "the presumption in 23 [Pa.C.S.] § 6381(d) is inherently self-rebutting, and applying it to one or both persons alleged to be the perpetrators would be arbitrary and capricious." L.Z., 91 A.3d at 216 (quoting J.G., 984 A.2d at 548). Given this precedent, the *en banc* panel held that "Section 6381(d) does not, however, permit the court to designate a parent a perpetrator of abuse where the record fails to establish that the child was in the parent's care at the time of the injury." L.Z., 91 A.3d at 216.[5]

---

[5] Seemingly, under the Superior Court's current holding, a children and youth services (CYS) agency, such as DHS, seeking a finding of abuse would have to prove (continued…)

The *en banc* Majority proceeded to apply this reading of Section 6381(d) to the facts of the case at bar. It recognized that there was no dispute that Mother and Aunt were Child's primary caregivers. The *en banc* Majority, then, set forth the facts as Mother and Aunt supplied them to the case worker at the hospital as if there were no dispute regarding their truth, even though neither Mother nor Aunt testified at the hearing and the hospital staff and trial judge found their assertions regarding Child's injuries implausible. Thus, the Superior Court Majority, essentially, made a finding of fact that Mother had not seen Child for two days before Aunt told her that Child's penis was bleeding. Id. at 217. Given that the doctor testified that the laceration was less than twenty-four hours old when it was examined in the hospital, the Majority proceeded to make the factual finding that the injury "was inflicted at a time when Child was not in Mother's care." Id.

As it found Mother was not present at the time of the laceration, it held that Mother could not be presumed under Section 6381(d) to have perpetrated the abuse or to be responsible for the abuse through omission, assuming without evidentiary support that Mother had not been home when Child's penis was cut and that she had no "reason to believe that Aunt, or anyone else, would inflict such abuse upon Child." Id. at 218-19. The court did not consider the application of Section 6381(d) to the cheek bruising or the diaper rash and yeast infection as it parsed those injuries from the penile laceration and concluded that they did not meet the definition of child abuse as discussed above. Accordingly, while the Superior Court found that the record clearly

(…continued)
that the parent was physically present at the moment of the abuse and that no other adult was responsible for the child before a court could apply the presumption of Section 6381(d).

supported a finding of dependency, it vacated the order finding Mother committed child abuse.

Judge Panella authored a dissenting opinion joined by Judges Bender and Wecht. The dissent did not view Child's injuries in isolation but instead "focus[ed] on the totality of Child's injuries" to determine whether Child suffered abuse. L.Z., 91 A.3d at 221 (Panella, J., dissenting). The dissent found "that the cumulative effect of Child's penile laceration, cheek bruising, and severe diaper rash resulted in severe pain sufficient to support a finding of child abuse pursuant to Section 6303(b)(1)(i) or (b)(1)(iii)." Id.

Moreover, the dissent determined that the record supported the trial court's conclusion that Mother perpetrated the abuse. In so doing, the dissent opined that the Majority had erred in limiting the application of the evidentiary presumption of Section 6381(d) to find *prima facie* evidence of an abuser's identity only when the abuser is proven to be present at the time of the injuries. Id. at 222-23 (relying upon J.R.W., 631 A.2d at 1024). The dissent emphasized Pennsylvania caselaw observing that a parent can be a perpetrator of child abuse through omission, given that a parent has a duty not merely to refrain from harming a child, but also a duty to protect a child from others who may inflict harm. Id. at 222 (discussing In re R.P., 957 A.2d 1205 (Pa. Super. 2008) and C.S. v. Dep't of Public Welfare, 972 A.2d 1254, 1259 (Pa. Cmwlth. 2009)).

The dissent recognized that the case at bar is "the exact type of case which demonstrates the Legislature's wise decision to establish the *prima facie* standard; a case where horrendous child abuse is inflicted, but none of the adults providing supervision for the child account for the time periods during which the abuse occurred." Id. at 222. The dissent observed that child abuse cases often involve "an apparent conspiracy of silence," where all the parents and caregivers refuse to explain who was

responsible for the child at the exact moment of injury.  Id. at 223 (referencing In re J.G., 984 A.2d at 547).  It recognized that the presumption of Section 6381(d) addresses this problem by balancing the need to protect the child and other children from future abuse against the rights of the parent, noting that a finding of child abuse does not require the same protections as would an adjudication of guilt.  Echoing the sentiments previously expressed in J.R.W., 631 A.2d 1019, the dissent opined, "The Legislature has determined that the likelihood clearly established abuse has occurred, other than at the hands of the custodian, is so small that *prima facie* evidence the custodian has caused the injury, either by acts or omissions, is all that is required."  Id. at 222 (emphasis omitted).

Applying this caselaw to the facts at bar, the dissent observed that Mother and Aunt were primarily responsible for Child.  It emphasized that neither of the persons responsible for Child provided any testimony regarding who had responsibility for Child at the time of his injuries.  Thus, "while [Mother] may or may not have been present when some of the injuries occurred, it was Mother's failure to properly care for and protect Child which necessitates that she be listed as a perpetrator [of child abuse]."  Id. at 224.

Turning to Mother's responsibility for the individual injuries, the dissent emphasized the brutality of the penile laceration and the implausible explanation given by Aunt.  It further opined that even if Mother did not inflict the lacerations, her actions related to the injury "evidence[d] a dereliction of parental duties sufficient to support a finding that Mother is a perpetrator of child abuse by actions or omissions."[6]  Id. at 224-25.  Regarding the cheek bruising, the dissent rejected the Majority's reading of the

---

[6]   The dissent observed the notation in the record that Mother and Aunt stopped at Dunkin' Donuts during the course of transporting Child to the hospital.

doctor's testimony, and instead opined that the doctor found that Child had suffered severe pain when his face was squeezed, even if expressed in a colloquial phrase, after noting that the bilateral cheek bruising is a common abuse injury. The dissent stressed that Mother admitted to being present when Child suffered the cheek bruising and provided an incredible explanation regarding how these injuries occurred. Thus, the dissent would have held Mother responsible under Section 6381(d) for the cheek bruises whether she inflicted the injuries or failed to protect Child from sustaining them. The dissent further noted the trial court's recognition that Child suffered physical neglect as evidenced by the severe diaper rash and untreated yeast infection, which was inconsistent with the explanation Mother gave to the hospital caseworker during Child's time in the hospital. Given that the record supported the trial court's determinations, the dissent would have affirmed the court's findings that the injuries constituted abuse.

We granted review, as sought by GAL, to consider whether the Superior Court exceeded its scope and standard of review in substituting its judgment for the trial court, and further whether it misconstrued the CPSL's definition of child abuse and the evidentiary presumption of 23 Pa.C.S. § 6381(d), which provides that when a child incurs abuse not ordinarily suffered absent acts or omissions of a parent or other person responsible, the fact of abuse suffices to establish a *prima facie* case of abuse by the parent or responsible person.[7] DHS also filed a brief as a participant in support of

---

[7] Specifically, we granted review of the following issues as stated by Child's GAL:

> (1) Whether the Superior Court, in holding that a parent may only be designated a perpetrator of abuse if the child is "in the parent's care at the time of the injury," disregarded the Child Protective Services Law (CPSL) 23 Pa.C.S.A. §§ 6301–6386 and departed from established precedent which define "child abuse" to include "acts or omissions" and which permit the dependency court to identify a parent as a

(continued…)

Child, primarily addressing the second issue regarding the interpretation of Section 6381(d).

GAL's first question addresses factual and credibility determinations primarily related to the then-applicable definition of child abuse under Section 6303.[8]  GAL asserts that the Superior Court disregarded (1) the trial court's factual finding that the penile laceration and the bilateral cheek bruising constituted physical abuse, (2) the trial court's conclusion that Child's injuries were consistent with a pattern of abuse,[9] and (3)

---

(…continued)

> perpetrator based on *prima facie* evidence that the abuse would not have occurred but for the acts or omissions of the parent and clear and convincing evidence that the child was the victim of child abuse?
>
> (2) Whether the Superior Court erred and exceed[ed] its scope and standard of review in vacating the trial court's finding of abuse against Mother, by disregarding important findings of fact of the trial court, by reweighing the evidence, by making assessments of credibility and by substituting its judgment for that of the trial court, where the trial court found that the child's multiple injuries were consistent with a pattern of abuse, that Mother provided explanations inconsistent with the injuries, that Mother was responsible for the child's care and protection, and that Mother failed to act to protect the child from the serious physical injuries he suffered?

In re L.Z., 96 A.3d 989 (Pa. 2014).  Child's GAL reverses the order of these issues in its briefing, a sequence which we will also adopt.

[8]     While we apply the prior definition to the case at bar, we recognize that our consideration of this issue may have limited significance going forward given the recent amendments broadening the definition of child abuse.  See *supra* at 4 n.3.

[9]     GAL observes that the Superior Court omitted from its block quotation of the trial court's factual findings the paragraph summarizing Dr. Silver's determination that Child's "injuries were consistent with a pattern of suspected child abuse."  Tr. Ct. Op. at (continued…)

the court's determination that Mother's out-of-court explanations were inconsistent with the presentation of Child's injuries. GAL recites long standing case law that an appellate court should defer to the fact finding and credibility determinations of a trial court which has benefitted from observing the witnesses. GAL emphasizes that the Superior Court altered the trial court's recitation of the facts to decide that Mother was definitively not present when Child's laceration occurred, when the trial court merely noted that Mother "claimed" to have been staying with her paramour when Child suffered the injury, a claim which is suspect given the other assertions Mother and Aunt made to explain Child's injuries, to say nothing of the fact that Mother never testified. GAL's Brief at 29, citing Tr. Ct. Op. at 7.

Based on the facts as found by the trial court, GAL contends that the court was presented with clear and convincing evidence that Child suffered abuse for purposes of the then-applicable Section 6303. GAL further maintains that the record in the case at bar supports the trial court's conclusions that Mother was responsible for Child's injuries given that "Mother either was directly responsible for the child's condition or left the child with inappropriate caretakers[.]" GAL's Brief at 28.

In response, Mother avers that the Superior Court correctly determined that only the penile laceration was a non-accidental injury resulting in severe pain sufficient to constitute child abuse under the then-applicable Section 6303(b). She relies upon the Superior Court's reading of Dr. Silver's testimony to conclude that the bilateral cheek bruising did not constitute child abuse because it merely was "not comfortable," which

---

(…continued)
5. GAL fails to recognize that, while the trial court accurately described the doctor's testimony, it did not frame its own findings or conclusions in terms of a "pattern of abuse," nor was such a finding necessary, given that the court found Child's injuries met the statutory requirements when considered separately.

Mother claims is not a serious physical injury sufficient for child abuse. While acknowledging that she and Aunt were Child's primary caretakers, she continues to claim that she had not seen Child for two days prior to the hospital visit, and thus could not have inflicted the laceration which the doctor testified was less than twenty-four hours old when presented to the hospital.

Community Legal Services, Inc. and the Allegheny County Bar Foundation (*Amici*), both of which serve as parent advocates in dependency proceedings, filed an *amici curiae* brief in support of Mother. *Amici* argue that the Superior Court properly concluded that the diaper rash and bruising did not constitute abusive injuries because they did not cause Child severe pain or impair his functioning.[10] Moreover, *Amici* contend that the diaper rash and bruising could have arisen while Mother was not caring for Child. *Amici* additionally reject the dissenting opinion's reliance on a pattern of abuse given that the statutory definition of child abuse in Section 6303(b) references the singular "an injury" and in their view does not provide for an aggregation of harms. Regardless, *Amici* contend that the injuries, even if aggregated, only show inadequate caretaking, rather than child abuse. *Amici* further argue that Mother cannot be responsible for injuries that occurred while Child was with Aunt, as no evidence was produced that she knew or had reason to know that Aunt would abuse Child, obligating her to remove Child from harm. They argue that to presume Mother liable for Aunt's actions when Mother was not present would be irrational and, thus, in violation of due process.

Initially, we reiterate that "the standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial

---

[10]    *Amici* acknowledges that Child's injuries may constitute child abuse under the amended definition of Section 6303(b) effective December 31, 2014, *supra* at 4 n.3. *Amici's* Brief at 9 n.3.

court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." In re R.J.T., 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion, id., and first consider whether the Superior Court overstepped its authority in rejecting the trial court's consideration of the cheek bruising and severe diaper rash in determining whether Child suffered abuse.

As set forth above, the applicable version of the CPSL defined "child abuse" to include "any recent act or failure to act" which causes "nonaccidental serious physical injury;" "any recent act, failure to act or series of such acts or failures to act" "which creates an imminent risk of serious physical injury;" or "serious physical neglect" "which endangers a child's life or development or impairs the child's functioning." 23 Pa.C.S. § 6303(b)(1)(i), (iii), (iv), set forth in full supra at 4 n.3. In turn, the CPSL defined "serious physical injury" as an injury that causes "severe pain" or "significantly impairs" the child's physical functioning temporarily or permanently. Id. § 6303(a). While a petitioning party must demonstrate the existence of child abuse by the clear and convincing evidence standard applicable to most dependency determinations, 42 Pa.C.S. § 6341(c) (recognizing clear and convincing evidence as the necessary standard for concluding that a child is dependent), the identity of the abuser need only be established through prima facie evidence in certain situations as discussed infra.

We agree with GAL that the Superior Court erred and violated its standard of review when it rejected the trial court's factual determinations which served as the basis of the court's conclusion that Child suffered abuse, defined by Section 6303(b), as a result of "serious physical injuries" and "physical neglect." Tr. Ct. Op. at 7. We note that the trial court concluded that Child suffered "serious physical injuries," which necessarily encompasses more than one injury and would therefore logically include the cheek bruising as well as the laceration. Id.

There is no dispute that the penile laceration constituted child abuse. Nevertheless, because the parties dispute whether Mother can be held responsible for the laceration as discussed *infra*, it is appropriate that we also decide whether Child suffered serious physical injury when his cheeks were squeezed so hard as to cause dark bruising that remained for several days in a pattern recognized as indicative of child abuse. We hold that the record, specifically Dr. Silver's testimony, amply supports the trial court's findings that the dark bilateral cheek bruising constituted "serious physical injury" which would have caused Child "severe pain" for purposes of the then applicable definition of "child abuse" under Section 6303(a) and (b), notwithstanding Dr. Silver's somewhat flippant answer when asked about the pain Child suffered.[11]

We note that only the trial court observed and heard Dr. Silver and was therefore in a position to assess the tone, context, and, ultimately, meaning of her "I'm sure it couldn't have been comfortable" comment. The court implicitly found that the Doctor's testimony conveyed, albeit in a flippant manner, that the injuries caused severe pain. The record supports this conclusion. Indeed, after describing the large bruises in detail and observing that the pattern of bruising was a common abuse injury inflicted by squeezing the child's face, one can imagine that the doctor might have viewed the question as somewhat inane and responded as she did, indicating that it was obvious that the child suffered severe pain. It was thus improper for the Superior Court Majority to reverse the trial court on the basis of the literal language of the cold record. Finally, we conclude that the record supports the trial court's finding that the severe diaper rash

---

[11] We observe that both the laceration and the bilateral bruising on Child's cheek would clearly be encompassed by the current definition of child abuse which is defined to include "intentionally, knowingly or recklessly . . . [c]ausing bodily injury to a child," where "bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S. § 6303(a), (b) (as amended).

and yeast infection constituted "serious physical neglect," justifying a finding of abuse under Section 6303(b)(1)(iv), especially when considering that Mother's explanations for the weeks Child suffered severe diaper rash were rejected by Dr. Silver and the trial court.[12]

Having determined that clear and convincing evidence supported the trial court's conclusion that Child suffered abuse, we next consider whether the Superior Court erred in rejecting the trial court's determination that Mother perpetrated the abuse.[13] At the heart of this issue is a pure question of law: whether the Superior Court erred in relying upon prior intermediate appellate court decisions refusing to apply Section 6381(d) in multiple caregiver cases and extending this limitation by categorically rejecting the presumption in cases "where the record fails to establish that the child was in the parent's care at the time of the injury." L.Z., 91 A.3d at 216.

In essence, the Superior Court is requiring a CYS agency to prove that, at the moment of injury, the parent or caregiver was physically present and that no other adult was responsible for the child, before the CYS agency can argue for the application of

---

[12] We additionally question the Superior Court's refusal to look at Child's injuries holistically. It would be unreasonable to conclude that a child did not suffer abuse merely because the individual acts did not constitute "serious physical injury," when the aggregation of the injuries substantially harmed the child. Nevertheless, given the expansive definition of child abuse recently adopted by the Legislature, we doubt that a situation would arise again where a child who has clearly suffered abuse as commonly understood would not be able to meet the legal definition of abuse when looking at the injuries individually.

[13] We recognize that the Superior Court only considered the applicability of Section 6381(d)'s presumption in regard to the laceration injury. Nevertheless, we will address the application of the presumption to the laceration, the cheek bruising, and the diaper rash as we find all to constitute abuse. We can presume from the Superior Court's reliance on recent caselaw, as discussed *infra*, that the court would have concluded that the presumption would also not apply to the cheek bruising and diaper rash because Aunt and Mother had joint responsibility for the child during the relevant times.

the presumption of Section 6381(d), which provides that "*prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child" exists based upon "[e]vidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child." 23 Pa.C.S. § 6381(d). Ironically, in a case where an agency can meet the Superior Court's burden, there would be no need for the presumption. Thus, as detailed below, the Superior Court has written the statutory mandated presumption out of the law.

Appellants[14] urge this Court to hold that Section 6381(d) applies to all cases where the injuries would not ordinarily have been sustained but for the acts or omission of the parents or responsible person, even absent evidence that the parent or responsible person was present at the time of injury.[15] DHS additionally asks the Court to standardize the interpretation of Section 6381(d) as it applies to dependency cases addressed by the Superior Court, such as the case at bar, and expungement cases addressed by the Commonwealth Court.

Prior to addressing the parties' arguments, we review the interrelation of the relevant statutory provisions and the relevant intermediate court decisions as this Court has not spoken specifically to Section 6381(d). This case arises as a dependency action governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-6375, but also involves child

---

[14] As noted above, DHS, the CYS agency involved in this case, joins GAL as a participant in addressing this issue, see *supra* at 2 n.1. As GAL's and DHS's analysis of this issue substantially overlaps, we will summarize their arguments jointly as "Appellants."

[15] Appellants acknowledge, as will be discussed, that the presumption of Section 6381(d) may be rebutted with evidence that the parent or responsible person was absent at the time of the injury and not otherwise responsible for the injury by failing to secure proper care for the child.

abuse which is defined and addressed by the CPSL. 23 Pa.C.S. §§ 6301-6386. The Juvenile Act permits a court to adjudicate a child dependent based upon clear and convincing evidence, 42 Pa.C.S. § 6341(c), which in this case involved evidence of child abuse as defined by the Section 6303 of the CPSL, discussed *supra*.

As part of the dependency adjudication, a court may find a parent to be the perpetrator of child abuse, which in some cases may be established by *prima facie* evidence pursuant to Section 6381(d), as discussed in detail below. If the court finds the parent to have perpetrated abuse, the relevant CYS agency would file with the Department of Public Welfare a "founded report" as defined by Section 6303(a) of the CPSL,[16] which would trigger inclusion on the statewide ChildLine Registry, which is also governed by the CPSL, specifically 23 Pa.C.S. § 6331. The finding of child abuse in a dependency proceeding can be appealed to the Superior Court, as Mother did in the case at bar. An individual can also petition to expunge the founded report from ChildLine through a Department of Public Welfare administrative process that would eventually be subject to appeal in Commonwealth Court.[17]

---

[16]    A founded report was defined as follows:

> A child abuse report made pursuant to this chapter if there has been any judicial adjudication based on a finding that a child who is a subject of the report has been abused, including the entry of a plea of guilty or nolo contendere or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse.

23 Pa.C.S. § 6303(a) (prior to amendment). The definition has been amended, effective December 31, 2014, to list various types of judicial adjudications that would result in a founded report, including a finding of dependency under 42 Pa.C.S. § 6341(c).

[17]    This process will be further addressed in our review of Commonwealth Court case law *infra*.

Additionally, inclusion on the ChildLine Registry can be triggered outside of the Juvenile Act's dependency process through the filing by a CYS agency or the Department of Public Welfare of an "indicated report"[18] of child abuse when "substantial evidence" exists that an individual perpetrated child abuse as defined in Section 6303(a). 23 Pa.C.S. §§ 6303(a), 6331(3). Indeed, in this case, DHS filed an indicated report against Aunt while the dependency case was pending. As with a founded report, an individual may petition for the expungement of an indicated report through DPW's administrative process that could eventually be appealed to the Commonwealth Court. As noted, because findings of child abuse perpetration have been decided in both the Superior and Commonwealth Court and the combined precedent has culminated in the Superior Court decision under review, we find it necessary to review the application of the presumption of Section 6381(d) as developed through the precedent of both intermediate appellate courts.

The Superior Court in dependency cases has long recognized the applicability and importance of the evidentiary presumption in Section 6381(d) regarding the identity of the abuser. Over twenty years ago, the Superior Court explored this issue in In the Interest of J.R.W., 631 A.2d 1019 (Pa. Super. 1993), which involved a two-month-old who exhibited tell-tale signs of shaken-baby syndrome, likely suffered while under the care and control of both parents. As in the case at bar, the parents did not dispute the

---

[18] Prior to December 2014, the CPSL defined an "indicated report" as "[a] child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following: (1) Available medical evidence[,] (2) The child protective service investigation[,] (3) An admission of the acts of abuse by the perpetrator." 23 Pa.C.S. § 6303 (prior to amendment). Along with the other revisions, the legislature amended the definition of "indicated report" to expand the concept and also to allow explicitly for an indicated report "regardless of the number of alleged perpetrators." Id. (amended).

trial court's determination that the child was dependent, but, *inter alia*, challenged the court's determination that both parents were the perpetrators of abuse when the court could not distinguish which parent actually shook the child. The parents claimed that the identity of the abuser could not be established for purposes of a founded report based only on *prima facie* evidence that the abuse would have been unlikely absent the act or omissions of the parents, as provided by Section 6381(d), but had to be demonstrated by clear and convincing evidence as required for a finding of dependency under Section 6341(c) of the Juvenile Act, 42 Pa.C.S. § 6341(c).

Judge Tamilia cogently rejected the parents' argument, explaining the Legislature's "wise and necessary" decision for allowing the identity of the abuser to be established based upon the rebuttable presumption of Section 6381(d):

> *Prima facie* evidence is not the standard that establishes the child has been abused, which must be established by clear and convincing evidence; it is the standard by which the court determines whom the abuser would be in a given case. There is no conflict, constitutional or otherwise, with the clear and convincing evidence standard imposed by the [Juvenile] Act to establish child abuse. The Legislature has determined that the likelihood clearly established abuse has occurred, other than at the hands of the custodian, is so small that *prima facie* evidence the custodian has caused the injury, either by acts or omissions, is all that is required. We find no defect in this reasoning. Such a standard provides maximum protection for the child victim or other children in the community who might be subject to similar abuse if the alleged abuser was not identified and permitted free access to the victim or other vulnerable children. It is not equivalent to a finding of guilt in a criminal proceeding which could result in deprivation of freedom. Thus the [L]egislature has balanced the needs of society and children for protection against the abuser's possible patterned behavior and his/her right to freedom unless found guilty beyond a reasonable doubt.

Id. at 1024. The Superior Court, thus, affirmed the trial court's determination that both parents had perpetrated the abuse, given the *prima facie* evidence that both parents were "the primary custodians during the time of the abuse," despite the absence of any information demonstrating which parent inflicted the injury. Id. at 1025.

In the years since J.R.W., the Superior Court applied the presumption of Section 6381(d) in cases where multiple caregivers were responsible for care and protection of a child, even when the evidence failed to demonstrate definitively which individual inflicted the abuse. See R.P., 957 A.2d at 1217-18 (applying § 6381(d) in case where child suffered severe injuries over an extended period of time while in care of mother and father, where mother was found to have perpetrated abuse by omission even if she did not inflict any of the injuries); In the Matter of A.H., 763 A.2d 873, 876 (Pa. Super. 2000) (finding *prima facie* evidence that mother perpetrated abuse where she was the sole caretaker and child's injuries could not have occurred except by her acts or omissions; rejecting mother's explanations for the injuries as not credible; and recognizing her attempt to blame her boyfriend as indicative of her failure to protect child from abuse).

In 2009, the Superior Court addressed Section 6381(d) in *dicta* in a case relied upon extensively but erroneously as binding precedent by the *en banc* Majority in the case at bar. In re J.G., 984 A.2d 541. In J.G., the trial court determined that an infant suffered abuse and was dependent, but did not find that parents perpetrated the abuse, instead concluding that the abuse could have been inflicted by the babysitter while the parents were at work. The CYS agency appealed this determination. The Superior Court, however, dismissed the appeal, finding that the agency was not aggrieved given that the trial court found the child dependent as requested by CYS, rendering the

discussion in J.G., relied upon by the Superior Court herein, unnecessary for the case's disposition and thus pure *dicta*. Id. at 548.

In this *dicta*, the Superior Court spoke to the applicability of Section 6381(d) in a multi-caregiver situation. First, the court correctly refused to read Section 6381(d)'s use of "by the parent or other person" "as a disjunctive clause mandating strict proof that either one or the other" was responsible for the child's welfare in order for the presumption to apply. Id. at 547. "Rather, to effectuate the underlying intent of the statute and preserve the health and welfare of the child, we find that the phrase, 'by the parent or the other person,' is a term simultaneously encompassing both the singular and the plural." Id. Properly following its prior decision in J.R.W., the court further explained that "proof of the nature of the child's harm, alone, is *prima facie* evidence of child abuse by anyone and/or all who are found to be 'responsible for the welfare of the child' during the time of the alleged injuries." Id.

The Superior Court in J.G., however, focused in *dicta* upon whether the parent or responsible person had responsibility for the child at the time of the injury. The court improperly concluded that "the viability of the presumption of [Section 6381(d)] is questionable" and "inherently self-rebutting," such that it "would be arbitrary and capricious" to apply the presumption in cases where the trial court finds that it cannot determine if the parent had responsibility for the child. Id. at 547-48.

Having explained the Superior Court's decisions relating to the presumption of Section 6381(d) in dependency cases, we will hold our discussion of its erroneous statutory construction until later and turn next to the Commonwealth Court's application of Section 6381(d)'s presumption in expungement cases, which in fact appear to have lead the Superior Court astray. As noted, the Commonwealth Court generally addresses Section 6381(d) in the context of appeals from administrative decisions

regarding petitions to expunge founded and indicated reports under the CPSL. While dependency determinations must be supported by clear and convincing evidence under 6341(c) of the Juvenile Act, the CPSL requires substantial evidence of the abuser's identity to support a denial of a petition to expunge.

The Commonwealth Court first addressed the application of Section 6381(d)'s presumption in the expungement case of J.B. v. Department of Public Welfare, 898 A.2d 1221 (Pa. Cmwlth. 2006). The case involved a toddler who suffered severe immersion burns on his feet which only could have been inflicted by his mother or her boyfriend given the timing and circumstances of the injury. While no direct evidence implicated the boyfriend, *prima facie* evidence existed, pursuant to Section 6381(d), that he was a perpetrator of the abuse given that he had responsibility for the child and was in the house at the time of the injury. After CYS filed an indicated report of abuse against him, the boyfriend petitioned to expunge it claiming that the indicated report could only be supported by substantial evidence of the identity of the abuser as required by Section 6303 and could not be based upon *prima facie* evidence pursuant to Section 6381(d) presumption.

On appeal from the denial of expungement, the Commonwealth Court properly rejected the boyfriend's argument based upon the Superior Court's analysis in J.R.W. Id. at 1225-26.[19] The Commonwealth Court recognized that the General Assembly "established a different evidentiary standard for finding child abuse by a parent or person responsible for the child's care[.]" Id. at 1225. The court emphasized, however, the presumption established in Section 6381(d) "can be rebutted, like other statutory presumptions, with countervailing competent, substantial evidence." Id. at

---

[19] The Commonwealth Court later overruled the conclusion in J.B. that Section 6381(d) could apply in multiple caregiver cases, as recognized by B.B. v. Department of Public Welfare, 898 A.2d 1221 (Pa. Cmwlth. 2011), as discussed *infra* at 29.

1226. While the boyfriend had testified, the trial court found his explanation inconsistent with the child's injuries and therefore not credible. The Commonwealth Court, accordingly, concluded that the boyfriend failed to rebut the presumption that he perpetrated the abuse and denied the petition to expunge.

Starting with C.E. v. Department of Public Welfare, 917 A.2d 348 (Pa. Cmwlth 2007), the Commonwealth Court began to diverge in *dicta* from the Superior Court's caselaw originating in J.R.W. and its own decision in J.B., erroneously limiting the applicability of Section 6381(d)'s evidentiary presumption. C.E. involved an appeal from the Department's denial of a petition to expunge an indicated report of child abuse involving an allegation of sexual abuse of a three-year-old girl by her mother's boyfriend during a day when the child was in the care of the boyfriend but also spent time in the care of her paternal relatives.

The Commonwealth Court vacated the denial based on what it determined were prejudicial violations of the rules of hearsay, but also spoke to CYF's assertion that the denial of expunction could be affirmed based upon the application of Section 6381(d)'s presumption as set forth in J.B. The court rejected the argument as having been waived by CYS at the hearing. In *dicta,* given that the Section 6381(d) issue was deemed waived, the court opined that the presumption did not apply because the petitioner-boyfriend had only been responsible for the child for a portion of the day, such that the injury could have occurred while she was in the care of her paternal relatives. The Superior Court in the case at bar relies upon this very limited analysis contained in *dicta* addressed to a waived issue. L.Z., 91 A.3d at 216.

Two years later, the Commonwealth Court further distanced itself from the solid analysis of J.R.W. and J.B. in a case involving a father's request for an administrative hearing on his expungement petition. C.S. v. Department of Public Welfare, 972 A.2d

1254 (Pa. Cmwlth. 2009). The child in C.S. suffered injuries consistent with shaken-baby syndrome, where the symptoms presented when the child was in the parents' care and the parents failed to provide reasonable explanations for the observed injuries. The court in the dependency action utilized tentative language in finding parents perpetrated the abuse, noting, for example, that the court "could not determine with absolute certainty" that the parents perpetrated the abuse and that the evidence made it possible but unlikely that the injury could have happened earlier in the day when the child was with other caregivers. Id. at 1256 (emphasis removed).

The court in C.S. held that a remand for an administrative hearing was required prior to the denial of an expungement petition unless there was "substantial evidence to support the findings made in the dependency proceeding that the appellant was the perpetrator of the abuse[.]" Id. at 1263 (emphasis removed; distinguishing its prior decision in K.R. v. Department of Public Welfare, 950 A.2d 1069, 1080 (Pa. Cmwlth. 2008), which concluded that a remand for an expungement hearing was not necessary where *prima facie* evidence had been presented and not rebutted in the dependency proceedings). In essence, the court required an evaluation in the expungement matter of the dependency record to consider whether substantial evidence of abuse existed, even though the finding of the abuser's identity in the dependency matter was properly based on *prima facie* evidence of abuse pursuant to Section 6381(d). It concluded that the record in C.S. did not provide substantial evidence that the father perpetrated the abuse. Accordingly, it remanded for a hearing on the expungement petition.

Critical to the court's ultimate disposition in C.S. was its conclusion that the use of *prima facie* evidence to support a finding of the perpetrator's identity in a dependency adjudication could not meet the substantial evidence standard required for maintaining an indicated child abuse report under the CPSL. It reasoned that the presumption of

Section 6381(d) could not apply to expungement cases under the CPSL, inexplicably opining that the presumption, as set forth in Section 6381(d) of the CPSL, only applies to dependency cases under the Juvenile Act. Id. at 1259-60. While the court held that dependency proceedings are fundamentally different from expungement proceedings, it failed to explain why an evidentiary provision of the CPSL would not apply to expungement proceedings governed by the CPSL.[20]

Subsequently, the Commonwealth Court has departed even further from the holdings in J.R.W. and J.B. and held that Section 6381(d) was inapplicable in cases involving multiple caregivers.[21] First, the court explored the issue, again in *dicta*, in J.W. v. Department of Public Welfare, 9 A.3d 270, 273 (Pa. Cmwlth. 2010). J.W. involved petitions to expunge indicated reports against three caregivers of a toddler who was brought to a medical center for a well-baby visit with healing burns, bruises, and broken bones, some of which appeared to have occurred ten to fourteen days prior to the appointment. The ALJ initially denied the petition to expunge based upon Section 6381(d)'s presumption with the following convincing reasoning,

> [I]t would appear that the purpose of 23 Pa.C.S. § 6381(d) is to prevent multiple caregivers from "circling the wagons." While [Petitioners] in this case may have chosen to "circle the wagons" so that the identity of the abuser(s) could not be determined, none of them offered any credible evidence to rebut the presumption. The intent of the presumption is to shift the burden to the caregivers to offer substantial

---

[20]   As discussed below, we reject the court's conclusion that Section 6381(d) does not apply to expungement proceeding, see *infra* at 34 n.23.

[21]   Given that C.S. held that CYS agencies cannot rely on *prima facie* evidence in expungement proceedings generally, C.S., 972 A.2d at 1264, the same would seem to be true for expungement proceedings involving multiple caregivers. Thus, while the courts relied on C.S. for support, it is not clear why C.S. would not have controlled these decisions outright.

> countervailing evidence that would rebut the presumption. The presumption is not conclusive proof the caregivers committed the abuse[;] it merely prevents them from sitting back and having the court play a guessing game[,] which is not the nature of judging.

Id. at 272 (quoting decision of ALJ). The ALJ denied the petitions because each caregiver had control of the child during the period of abuse and none presented credible evidence to rebut the presumption of Section 6381(d).

The Commonwealth Court, however, concluded that CYS had waived the application of Section 6381(d) by failing to raise it at the hearing. The court, nonetheless, opined in *dicta* that Section 6381(d) did not apply to the multiple caregiver situation because the language of the statute referencing "the parent or other person responsible for the welfare of the child" should be read in the singular and "apply only when it is possible to determine that a particular person was responsible for the welfare of the child during the period of the abuse." Id. at 273. Moreover, relying on C.S. it reasoned that the denial of expungement required substantial evidence that the petitioners were the perpetrators of the abuse. Id.

Similarly, in B.B. v. Department of Public Welfare, 17 A.3d 995 (Pa. Cmwlth. 2011), the Commonwealth Court addressed a case of child abuse involving multiple caregivers, where CYS filed an indicated report against the grandmother. The ALJ denied the grandmother's petition to expunge because she was responsible for the children during the "injury occurrence window," and concluded that the presumption of Section 6381(d) applied and had not been rebutted. Id. at 998.

The Commonwealth Court reversed the ALJ's denial of the petition to expunge based on an improper construction of Section 6381(d). It relied upon the statute's use of the singular terms of "parent" and "person," which it viewed as providing that "the presumption embodied [by Section 6381(d)] cannot be applied where more than one

individual was entrusted with a child's care during the period in which medical evidence shows the injuries were inflicted." Id. at 1001. The court explicitly rejected application of the rule of statutory construction that "[t]he singular shall include the plural, and the plural, the singular." Id. at 1002 (quoting 1 Pa.C.S. § 1902). Applying the holding to the facts before it, the court held that the standard could not be met because multiple people had cared for the children during the potential window of abuse.

Given this summary of the relevant law in the intermediate appellate courts, we turn to the parties' arguments on the issue before us regarding whether the Superior Court erred in limiting the application of the Section 6381(d) presumption to cases where the abused child "was in the parent's care at the time of the injury," which it derived from the Commonwealth Court's recent caselaw forbidding the application of Section 6381(d) in multi-caregiver situations. L.Z., 91 A.3d at 216.

Appellants assert that the court erred in deviating from the Superior Court's longstanding application of Section 6381(d) in cases involving multiple caregivers. They contend that Judge Tamilia properly enunciated the purpose of Section 6381(d) in J.R.W., *supra* at 22-23, which Appellants deem a "risk management model." Under this model, Appellants argue that the Legislature properly balanced the need to protect an abused child as well as potential future victims with the need to protect the rights of the alleged perpetrator.

Echoing the dissent below, Appellants emphasize that, in cases to which Section 6381(d) would apply, objective witnesses will rarely, if ever, be willing to testify to the abuse first hand and the abused children are often too young and/or too fearful to implicate their parents or other responsible persons in the abuse. In such cases, Appellants argue that the Legislature enacted Section 6381(d) intending to err in favor of protecting children, rather than protecting the alleged perpetrator, especially

considering that the sanction results only in inclusion on the ChildLine Registry rather than criminal sanctions, which would require greater protection of the alleged perpetrator.

Appellants contend that the Superior Court's current decision endangers children's safety by allowing one responsible for the abuse of a child to avoid application of the Section 6381(d) presumption and "escape responsibility for [the] child's abuse by simply telling DHS that he/she was not with the child when the abuse occurred." GAL's Brief at 32. Appellants maintain that Section 6381(d) was instead designed to address the "conspiracy of silence" that is often displayed in child abuse cases, where the abuse is evident but none of the adults responsible for the child provide information accounting for the abuse, as occurred in this case. Appellants observe that the rebuttable presumption of Section 6381(d) properly transfers the burden of proof in these limited cases to the parents and caregivers who hold the relevant information regarding their involvement in the child's injuries, such that they can refute the presumption.

Appellants assert that the Superior Court in the case at bar has improperly focused on the phrase "during the time of the abuse" which has been employed in prior Superior Court multi-caregiver cases but is conspicuously missing from the statute, without recognizing that the focus of the prior analysis had been on whether the parents or responsible persons were the primary custodians for the child rather than on whether they were physically present at the time of the injury. GAL's Brief at 48 n.13.[22]

Appellants urge this Court to reject the restriction of Section 6381(d), as applied by the Superior Court in the case at bar. Instead, they argue in favor of uniformly applying the Section 6381(d) *prima facie* evidence standard in dependency and

---

[22] Even this analysis misses the mark by requiring demonstration that the parent is "responsible for the child," as will be discussed *infra* at 33.

expungement cases to protect children in the limited cases where the abuse is unlikely to have occurred absent acts or omissions of the parent or caregiver, even in situations where multiple individuals were responsible for the child, and in cases of omission where the caretaker was not present at the time of the injury but should have provided for the child's protection.  DHS's Brief at 46-47.

In contrast, Mother agrees with the Superior Court's rejection of the application of Section 6381(d) in cases where the evidence does not definitely demonstrate that the child was in the presence of the alleged perpetrator at the time of the injury.  Similarly, she avers that we must guard against the presumption being applied arbitrarily or capriciously when the child is under the care of multiple people and "the evidence is inconclusive as to who had control or supervision over the child at the time of the abuse[,]" as described by the Superior Court in J.G., 984 A.2d at 548.  Mother's Brief at 9.  Accordingly, she urges this Court to affirm the Superior Court's reversal of the trial court.

Parent advocates Community Legal Services and the Allegheny County Bar Foundation, acting as *amici* for Mother, assert that the Superior Court correctly rejected an attempt to expand Section 6381(d) "beyond its statutory and constitutional bounds." *Amici's* Brief at 1.  *Amici* attempt to reframe the argument of Appellants as advocating that a parent be held "strictly liable for the abuse committed by a caregiver," even when the abuse occurs outside the parent's presence such as at school or church.  *Amici's* Brief at 1.  They contend parents would jeopardize their constitutional rights to the care and control of their children when they leave children with others, even without reason to suspect abuse by the caregiver.  *Amici's* Brief at 22.  Moreover, they argue that this construction puts an unfair burden on parents to rebut the presumption that they are responsible for the abuse.

After review, we reject the *en banc* Superior Court's Majority's conclusion, as championed by Mother and *Amici*, holding that the Section 6381(d) presumption only applies to cases where the abused child was "in the parent's care at the time of the injury." L.Z., 91 A.3d at 216. We agree with DHS that the Superior Court, in this case and other recent precedent, and Commonwealth Court, in its caselaw, have erred in multiple respects.

First, to the extent that the courts have required a parent's physical presence during the injury based upon the phrase "responsible for the child," we reject the application of this phrase to "parents." Instead, we observe that the phrase modifies the immediately preceding term, "other person," understandably limiting the class of other persons who can be held presumptively accountable for any injuries suffered by a child. Conversely, parents are always responsible for their children, absent extenuating circumstances, such that it would be repetitive to apply the limiting phrase to parents.

Additionally, we note that the plain language of the statute neither mentions nor focuses upon the parent or responsible person's physical presence at the time of the injury, but rather extends to both acts and omissions of the parent or responsible person. The inclusion of "omissions" encompasses situations where the parent or responsible person is not present at the time of the injury but is nonetheless responsible due to his or her failure to provide protection for the child.

Moreover, we recognize that the Superior Court's physical presence limitation arises from erroneous recent precedent of the Commonwealth Court prohibiting application of the Section 6381(d) presumption in cases involving multiple caregivers. Id. As noted above, the caselaw rejecting the application of Section 6381(d) to multi-caregiver situations is rooted in the intermediate courts' conclusion that subsection (d) only applies when the injury would not have occurred but for the acts or omissions of an

individual person, based on the use of the singular in the phrase "the acts of omissions of the parent or other person responsible for the welfare of the child."

The courts' erroneous focus on the singular form of parent and person, however, violates the Rules of Statutory Construction, which specifically provide that "[t]he singular shall include the plural, and the plural, the singular." 1 Pa.C.S § 1902. More significantly, the restriction on the presumption of Section 6381(d) to an individual actor fails to appreciate the Legislature's intent, which requires consideration of how the presumption interacts with the Juvenile Act and other sections of the CPSL.

Both the Juvenile Act's dependency proceedings relevant to Superior Court caselaw and the CPSL's expungement proceedings relevant to Commonwealth Court precedent generally require CYS agencies to meet a relatively high standard of proof, demanding, respectively, clear and convincing evidence to find a child dependent and substantial evidence to deny an expungement petition.[23] The Legislature, however, carved out a very limited exception to these more stringent evidentiary standards, allowing for the possibility of identifying the perpetrator of abuse based on *prima facie* evidence in cases where the abuse is "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child." 23 Pa.C.S. § 6381(d). To read this

---

[23]     Rejecting the Commonwealth Court's holding in <u>C.S</u> that Section 6381(d) does not apply to expungement proceedings, we observe that Section 6381, entitled "Evidence in court proceedings," explicitly provides that "[i]n addition to the rules of evidence provided under 42 Pa.C.S. Ch. 63 (relating to juvenile matters), the rules of evidence in this section shall govern in child abuse proceedings in court or in any department administrative hearing pursuant to section 6341 (relating to amendment or expunction of information)." 23 Pa.C.S. § 6381(a). The "rules of evidence in this section" necessarily include subsection (d)'s provision relating to *prima facie* evidence. <u>Id.</u> § 6381(d).

section as only applying when one parent or one responsible person is present would so restrict its applicability as to negate its existence.

As noted in the discussion of the relevant precedent, child abuse cases often involve a child presenting to a hospital with significant injuries that are entirely consistent with common types of child abuse and entirely inconsistent with the implausible explanations concocted by the parents and responsible persons to avoid allegations of child abuse. As noted, in cases where multiple caregivers are involved, the individuals frequently "circle the wagons" or alternatively point fingers at each other. As the children may be too young or fearful to describe the abuse, CYS agencies are left to prove their case with only the physical evidence of injuries that would not ordinarily be sustained but for the action of the parents or responsible persons and the implausible statements of the parents and responsible persons. Thus, while they can prove the existence of abuse rather easily, they have no ability to assign responsibility for the heinous act among the responsible adults. As Judge Tamilia observed in 1993, "the Legislature deemed it wise and necessary to establish a different evidentiary standard" by enacting Section 6381(d)'s presumption to avoid this evidentiary conundrum and protect children from future abuse. J.R.W., 631 A.2d at 605. We emphasize that, when a child is in the care of multiple parents or other persons responsible for care, those individuals are accountable for the care and protection of the child whether they actually inflicted the injury or failed in their duty to protect the child.

Moreover, the Legislature balanced the presumption of Section 6381(d) by making it rebuttable as it merely establishes "*prima facie* evidence" that the parent perpetrated the abuse. 23 Pa.C.S. § 6381(d). As commonly understood, *prima facie* evidence is "[s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and

which if not rebutted or contradicted, will remain sufficient." Black's Law Dictionary 825 (6th ed. abridged 1991). Accordingly, evidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive.[24] The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

Applying Section 6381(d) as set forth above to the case at bar, we affirm the trial court's determination that Mother perpetrated the abuse in the form of the laceration, the cheek bruising, and the severe diaper rash and yeast infection. First, because the medical evidence presented by DHS demonstrated that Child's injuries were neither accidental nor self-inflicted and because Child was only in the care of Mother and Aunt, the injuries were shown to be "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child[.]" 23 Pa.C.S. § 6381(d). Ergo, either Aunt or Mother or both inflicted the abuse Child suffered or failed to protect him from the other's

---

[24] We reject *Amici's* argument that Section 6381(d) would make the parent or caregiver responsible for the abuse a child suffers while at school or church. As the presumption only applies in situations where it is unlikely that the child could have suffered the injuries but for the acts of omissions of the parent or caregiver, a parent or caregiver would only be deemed a perpetrator of abuse suffered at the hands of a teacher or clergy if the parent or caregiver should have known of the danger into which they placed the child.

abuse. Mother failed to rebut the presumption by presenting evidence or testimony from her, Aunt, or her boyfriend establishing that Child was not in her care when the injuries were suffered and that she had no reason to question her decision to leave Child in Aunt's care. Likewise, neither Aunt nor anyone on her behalf testified. Mother and Aunt's self-serving claims made at the hospital were neither under oath nor subject to cross-examination. They were outside-the-record and do not constitute rebuttal evidence.[25]

Instead, ample, uncontested, unrebutted evidence existed for the trial court to presume that Mother perpetrated abuse on Child. In regard to the diaper rash, it was put into evidence that Mother acknowledged to the hospital staff her awareness of the condition and blamed it on weeks of diarrhea. Dr. Silver testified rejecting Mother's extrajudicial contention because the rash was on the front of Child's body, indicative of prolonged contact with urine, rather than on the buttocks, which would have been consistent with diarrhea. Thus, the trial court was well within its discretion and fully supported by the record when it properly concluded that Child suffered physical neglect as a result of the severe diaper rash and yeast infection due to his caregivers' failure to change his diaper (or to obtain medical treatment).

Additionally, the trial court did not abuse its discretion in discrediting Mother's implausible out-of-court explanation and instead crediting the treating doctor's testimonial determination that the cheek bruising was classic child abuse. The court found Dr. Silver credible given the pattern of bruises showing that someone squeezed Child's face between her thumb and fingers, bruising which could have occurred during the window of time Mother acknowledged having control of Child and bruising that the

---

[25]    Moreover, we would not fault a trial court for failing to credit any explanations that would have been given considering the implausibility of the other assertions provided at the hospital regarding Child's injuries.

doctor testified would have caused Child severe pain. Moreover, even assuming Mother did not inflict the penile laceration or the cheek bruising, she is still responsible for Child's injuries by failing to protect him from Aunt, absent rebuttal from Mother that she had no reason to fear leaving Child with Aunt.

We conclude that the presumption of Section 6381(d) is applicable to this case and that Mother offered no testimony to rebut it. Thus, the trial court properly found Mother perpetrated the abuse on Child either by inflicting the injuries or failing to protect Child from Aunt. Accordingly, we reverse the decision of the Superior Court and reinstate the trial court's order.

Former Chief Justice Castille did not participate in the decision of this case.

Mr. Chief Justice Saylor, Mr. Justice Eakin, Madame Justice Todd and Mr. Justice Stevens join the opinion.