J-A10032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: B.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: BRADFORD COUNTY CHILDREN & YOUTH SERVICES | No. 1824 MDA 2014 |

Appeal from the Order entered September 29, 2014,
in the Court of Common Pleas of Braford County, Juvenile
Division, at No(s): CP-08-DP-0000006-2014

BEFORE:  GANTMAN, P.J., MUNDY, and JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 10, 2015**

Appellant, Bradford County Children and Youth Services ("CYS"), appeals from the trial court's order entered on September 29, 2014, adopting the Master's Recommendation finding that J.L. ("Mother") did not emotionally abuse B.L. ("Child"), and that aggravated circumstances against Mother did not exist.[1]  This finding followed a request by CYS at a September 24, 2014 permanency review hearing that the Master find Mother emotionally abused Child.  We reverse and remand, with instructions.

On April 20, 2014, CYS received a report that Child, who was born in August, 2008, had been locked in his bedroom for three days, and was permitted out of his bedroom only to eat.  The reporter informed CYS the room was bare except for a potty chair.  CYS contacted the police department.  When police officers arrived at the residence, Child was locked

---

[1] B.G., Child's father ("Father"), was incarcerated at the time of the incident and remains incarcerated.  Father is not a party to this appeal.

inside the bedroom. Child's bed was inside the closet, and the bed was soaked in urine. The officers found feces on Child's bedroom floor and on the wall.

On April 20, 2014, CYS filed an amended dependency petition[2] and, that same day, the trial court issued an emergency order temporarily placing Child in the protective custody of CYS. Emergency Order, 4/2-/2014. On April 23, 2014, following a shelter care hearing, the trial court ordered CYS to obtain custody of Child, and Child was placed in foster care.

Mother testified at a May 22, 2014 adjudicatory hearing. Mother admitted Child was locked in the bedroom at night and several times during the day. Mother regularly left Child home with Mother's girlfriend, A.W., whom Child feared. On May 22, 2014, Child was adjudicated dependent. The dependency order allowed Mother to have supervised visits with Child, but A.W. was not allowed to have contact with Child.

Following a June 26, 2014 dispositional hearing, the Master filed a Recommendation, which the trial court adopted on July 1, 2014 and which included the following findings:

---

[2] On February 10, 2014, CYS filed a dependency petition alleging Child was without proper care or control and alleging he remained in the home but was in imminent risk of placement in foster care absent preventive services. The petition filed by CYS followed a report that Child had unexplained injuries inconsistent with Child's report of such injuries. The petition requested access to Child at school and home to assess Child's safety. That same day, the trial court issued an order granting CYS access to Child to view the injuries and interview Child.

1. The report of Richard E. Dowell, Jr., Ph.D., clinical neuropsychologist, finds [Child] suffers from post traumatic stress disorder arising from the environment in which Mother has raised [Child].

2. The Child has extreme behavioral issues that have resulted in his having to repeat Kindergarten and his having an inability to interact appropriately with others.

Master's Recommendation for Disposition, 6/26/2014, at 2; Order, 7/1/2014.

On September 24, 2014, the Master held a permanency hearing. At the permanency hearing, Samantha Group, a foster care coordinator; G.K., Child's foster mother ("Foster Mother"); and Nicole Pidcoe, a CYS caseworker, testified. At the hearing, CYS presented the written report of Richard E. Dowell, Jr., Ph.D., a clinical neuropsychologist. Dr. Dowell opined that Child suffered from Post-Traumatic Stress Disorder ("PTSD"). The trial court quoted the following portions of Dr. Dowell's report:

> According to available records/reports, [C]hild's history is remarkable for the presence of multiple home environment risk factors including parental separation, paternal absences, reports of residing with multiple sexual perpetrators including biological father, paternal arrests/incarcerations (multiple), inconsistencies, unpredictability, foster care placement, multiple caretakers, possible abuse, neglect and deprivation. Biological (family history) risk factors are not clear, but likely include significant mental health issues. No child medical or biological risk factors were identified. Symptom onset was described as being gradual during early childhood with interval history being characterized by a trend for worsening of problems as a function of environmental demands.

Under the heading "FAMILY HISTORY," Dr. Dowell included the following:

> According to parental reports, family history is remarkable for significant problems/conditions including problems with aggression, attentional problems, learning disability, depression, anxiety or adjustment problems, alcohol abuse, substance abuse, antisocial behavior, arrests/incarceration, physical abuse (victim), sexual abuse (victim) and sexual abuse (perpetrator).

The Dowell report also included the following under "PSYCHOSOCIAL HISTORY":

> According to parental reports, the home environment throughout infancy, early childhood is remarkable for the presence of multiple home environment risk factors including parental separation, paternal absences, reports of residing with multiple sexual perpetrators including biological father, paternal arrests/ incarcerations (multiple), inconsistencies, unpredictability, foster care placement, multiple caretakers, possible abuse, neglect and deprivation. Recent social history has been remarkable for significant problems including sibling rivalry, aggression, argumentativeness, having few friends and difficulties making friends.

Dr. Dowell's neuropsychological test results and interpretation yielded the following conclusions:

> While no specific etiology can be identified based solely on this profile, children with similar presentations commonly have histories of exposure to significant home environment stressors (i.e., abuse, neglect, deprivation, exposure to domestic violence, multiple moves, inconsistencies, placement outside the home, etc.) or limited support (i.e., parental arrests/ incarcerations, limited parental support for education, parental egocentricity, etc.).

Dr. Dowell further opines:

This discrepancy between abilities and skills is common among children with histories of neglect, deprivation, limited parental supervision and/or elevated distress levels secondary to multiple caretakers, inconsistencies, abuse or unpredictable conditions.

The Dowell Report continues:

The validity scale profile of the PIC-R is remarkable for an open and honest response style with evidence of significant parental distress (T = 98). In contrast, parental report on the Family Relations (T = 67) scale is suggestive of a relatively predictable and stable current home environment. The observed discrepancy between home environment (low) and parental (high) distress levels is atypical and, when present, tends to be associated with parental feelings of being overwhelmed by the demands of parenting this child and/or parental requirements to compensate for child weaknesses particularly with respect to higher level executive functions or coping resources. Findings imply that parent education, training and/or support to assist the family in implementing intervention programs or plans may be of benefit in assisting them in generalizing their understanding of intervention strategies into the real world setting. Parents with similar presentations also often receive community or home-based therapies.

Dr. Dowell concludes:

The child P1C-R profile is remarkable for clinically significant elevation on an overall measure of adjustment (Adj T = 114). This level of child distress is about 6.4 standard deviations above the norm. Children with similar distress levels typically display elevated limbic system-driven "fight or flight" distress responses for which they perceive very limited control. As noted above, no specific biological/neurological etiologies are identified on testing. Therefore, an environmental explanation or

etiology appears likely. This presentation is consistent with a [PTSD].

Comparison of Externalizing (average T 96) vs. Internalizing (average T = 98) coping resources reveals balance. This balanced coping style is generally associated with low levels of distress. The coincidence of high levels of distress despite balanced coping resources is atypical and, when present, is almost universally associated with a history of victimization or exposure to life stressors for which the child has control.

Trial Court Pa.R.A.P. 1925(a) Opinion, 11/10/14, at 1-3.

At the hearing, CYS requested that the Master find that Mother committed emotional abuse of Child. N.T., 9/24/2014, at 25-26.[3] Following the hearing, the Master recommended that:

[B]ased upon Dr. Dowell's report it [cannot] be found by clear and convincing evidence that Mother perpetrated emotional abuse [of Child]. It is only clear someone or some combination of persons within that environment committed the abuse. The actor may have been a third party or parties. Mother clearly neglected to protect this [C]hild from this environment, but [cannot] be found to have actually perpetrated the abuse. The Master finds that based upon this record the requested finding [cannot] be made applying the applicable burden of proof to the facts.

Master's Recommendation – Permanency Review, 9/24/2014, at 1-2.[4] On September 29, 2014, the trial court adopted the Master's Recommendation in an order.

---

[3] It appears CYS made a similar request at a prior hearing. N.T., 9/24/2014, at 25-26. At that time, the trial court withheld judgment. *Id.* at 26. The certified record does not contain the notes of testimony from the prior hearing.

On October 24, 2014, CYS filed a timely notice of appeal from the order, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). CYS raises the following issues on appeal:

1. Did the lower court err in failing to find that [M]other's failure to protect [Child] caused non-accidental serious mental injury to [Child]?

2. Did [CYS] fail to properly preserve this matter for appeal?

CYS's Brief at 6.

We will address CYS's second issue first, as it questions whether CYS has waived its first claim. The trial court maintained that CYS waived any challenge to the Master's Recommendation because it failed to file a challenge to the Recommendation within three days of receipt of the recommendation. **See** Pa. R.J.C.P. 1191 ("A party may challenge the master's recommendation by filing a motion with the clerk of courts within three days of receipt of the recommendation"). The Master did not make a finding regarding whether Mother perpetrated emotional abuse at the hearing, N.T., 9/24/2014, at 25-27, and the trial court docket indicates the Recommendation, which was dated September 24, 2014, was not entered on the docket until September 29, 2014. Further, the docket does not contain any notation that the Recommendation was served on CYS. Because the

---

[4] The Master further recommended, inter alia, that the court find that Child continues to be dependent, legal and physical custody of Child continue to be with CYS, and Child's foster-care placement shall continue.

- 7 -

court did not serve CYS with a copy of the Master's Recommendation, CYS did not waive its issues for failure to file a challenge.[5] **In re L.M.**, 923 A.2d 505, 509 (Pa.Super.2007) ("Where there is no indication on the docket that Rule 236(b) notice has been given, then the appeal period has not started to run.").

CYS challenges the Master's recommendation, adopted by the trial court, which found CYS did not prove by clear and convincing evidence Mother abused Child. The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows.

> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." **In re R.J.T.**, 608 Pa. 9, [27], 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

**In Interest of: L.Z.**, **A Minor Child**, 111 A.3d 1164, 1174 (Pa. 2015).

Section 6341 of the Juvenile Act governs dependency hearings and provides:

> **(c) Finding of dependency.--**If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case.

---

[5] Because CYS was not served with the Master's Report, we need not determine whether CYS would have waived its issue for failure to challenge the report.

> **(c.1) Aggravated circumstances.--**If the county agency
> or the child's attorney alleges the existence of aggravated
> circumstances and the court determines that the child is
> dependent, the court shall also determine if aggravated
> circumstances exist. If the court finds from clear and
> convincing evidence that aggravated circumstances exist,
> the court shall determine whether or not reasonable efforts
> to prevent or eliminate the need for removing the child
> from the home or to preserve and reunify the family shall
> be made or continue to be made and schedule a hearing as
> required in section 6351(e)(3) (relating to disposition of
> dependent child).

42 Pa.C.S. § 6341(c)-(c.1).

Section 6302 of the Juvenile Act defines a "dependent child" as:

> [a] child who:
>
> (1) is without proper parental care or control, subsistence,
> education as required by law, or other care or control necessary
> for his physical, mental, or emotional health, or morals.  A
> determination that there is a lack of proper parental care or
> control may be based upon evidence of conduct by the parent,
> guardian or other custodian that places the health, safety or
> welfare of the child at risk[.]

42 Pa.C.S. § 6302.  The Juvenile Act's definition of "Aggravated

circumstances" includes:

> (2) The child or another child of the parent has been the victim
> of physical abuse resulting in serious bodily injury, sexual
> violence or aggravated physical neglect by the parent.

42 Pa.C.S. § 6302.  The Juvenile Act, in turn, defines "aggravated physical

neglect" as, "[a]ny omission in the care of a child which results in a life-

threatening condition or seriously impairs the child's functioning." ***Id***.

Further, "[t]he Juvenile Act must be applied together with the Child

Protective Services law in resolution of child abuse complaints." ***In re R.P.***,

957 A.2d 1205 (Pa.Super.2008). In September of 2014, Section 6303(b) of the Child Protective Services Law ("CPSL"), provided that "child abuse" shall mean any of the following:

(i) Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.

(ii) An act or failure to act by a perpetrator which causes nonaccidental serious mental injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

(iii) Any recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

(iv) Serious physical neglect by a perpetrator constituting prolonged or repeated lack of supervision or the failure to provide essentials of life, including adequate medical care, which endangers a child's life or development or impairs the child's functioning.

23 Pa.C.S. § 6303. The CPSL was amended, effective December 31, 2014, to broaden the term "child abuse," as explained in ***In Interest of: L.Z.***, 111 A.3d at 1168 n.3.

The identity of the perpetrator(s) of abuse may be established by prima facie evidence that the abuse normally would not have occurred except by reason of acts or omissions of the caregivers. Section 6381 of the CPSL provides a presumption of abuse as follows:

**6381. Evidence in court proceedings.**

**(d) Prima facie evidence of abuse.**—Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of

- 10 -

the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S. § 6381(d).

In *In Interest of: L.Z.*, the Supreme Court of Pennsylvania stated

[e]vidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the prima facie evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

*In re L.Z.*, 111 A.3d at 1185.

CYS argues that the trial court should have found that Child was the victim of child abuse by Mother for her failure to protect Child and that aggravating circumstances exist. CYS's Brief at 11-14. CYS contends that Mother's omission caused Child a nonaccidental serious mental injury, PTSD. *Id.* The Master's recommendation stated:

[i]t cannot be found by clear and convincing evidence that Mother perpetrated the abuse of [C]hild. It is only clear someone or some combination of person within that environment committed the abuse. The actor may have been a third party or parties. Mother clearly neglected to protect [C]hild from this environment, but cannot be found to have actually perpetrated the abuse.

- 11 -

Master's Recommendation, 9/24/15, at 2-3. The trial court, in adopting the Master's Recommendation, found, "in the absence of a specific etiology attributable directly to Mother, the Master cannot find an omission in care that results in serious impairment of [Child]'s functioning." Trial Court Opinion, 11/10/14, at 5.

The Master found "someone or some combination of person within [Child's] environment committed the abuse" and Mother failed to protect Child from an abusive environment, but the Master failed to apply the presumption or to explain why the presumption would not apply. Based on our Supreme Court's instructions in *In Interest of: L.Z.* regarding the proper application of the presumption set forth in section 6381(d) of the CPSL, we find that the trial court erred. We direct the trial court to address the section 6381(d) presumption as it applies to Mother.

The trial court must also address the issue of whether the PTSD that Dr. Dowell diagnosed is nonaccidental serious mental injury. Further, on remand, the trial court must consider whether Child's PTSD seriously impairs Child's functioning as to be aggravated physical neglect pursuant to section 6302 of the Juvenile Act, and, if so, make a finding that aggravated circumstances exist as to Mother. Accordingly, we must reverse and remand for further proceedings consistent with this Memorandum.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2015