J-S82002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.R. , A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2005 EDA 2018 |

Appeal from the Order Entered June 18, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0002587-2017

BEFORE:   LAZARUS, J., OLSON, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                  **FILED JANUARY 24, 2019**

B.W. (Mother) appeals from the trial court's order adjudicating her then-eighteen-month-old child, N.R. (born 3/16), dependent and making a finding of child abuse and aggravated circumstances[1] under the Juvenile Act (the Act).[2]  After careful review, we affirm.

On September 22, 2017, the Philadelphia Department of Human Services (DHS) received a Child Protective Services (CPS) report alleging that Father[3] left Child, who was in Father's care, for an unknown period of time as Child drank a soda while lying on Mother and Father's bed.  When Father returned to the bedroom, Child was not breathing and was beginning to turn

---

[1] **See** 42 Pa.C.S. § 6341(2)(c.1) (aggravated circumstances after child adjudicated dependent).

[2] 42 Pa.C.S. §§ 6301-6375.

[3] Father is not a party to this appeal.

---

*   Retired Senior Judge assigned to the Superior Court.

blue. Father attempted to resuscitate Child; Child vomited and began breathing irregularly. Child ultimately stopped breathing and Father called 9-1-1. Child was transported to St. Christopher's Hospital for Children's (St. Christopher's) emergency room where he was minimally responsive and was breathing in a way that indicated something was blocking his airway. Child's pupils were dilated; Child was administered epinephrine and Narcan.[4] He responded positively by crying after he received the Narcan. Father admitted to DHS that he had left Child unattended at time of the incident. Both Mother and Father admitted that they kept Percocet in their bedroom nightstand drawer. Mother also admitted that there may be other opioids in the home. Mother was not home at the time of the incident. The hospital report certifies that Child was admitted to the hospital in serious or critical condition due to opioid ingestion and that the incident was classified as a "near fatality."

On September 26, DHS obtained an order of protective custody for Child and he was placed in a foster home due to safety concerns. On October 3, 2017, DHS filed a dependency petition with regard to Child, which also sought a finding of aggravated circumstances and child abuse against parents. On February 26, 2018, the court held an adjudicatory/child abuse hearing where Mariada Elizabeth Lind, M.D., an expert in pediatric child abuse, testified with regard to the circumstances surrounding Child's admission to St. Christopher's and his ultimate medical diagnosis. On June 18, 2018, the court

---

[4] Narcan is a nasal spray that is used to counteract the life-threatening effects of an opioid overdose.

held another adjudicatory hearing, where DHS worker Caitlin McGilloway, who was assigned to investigate Child's case testified. At the conclusion of the hearing, Child was adjudicated dependent and the court made findings of child abuse and aggravated circumstances with regard to Mother and Father. The court's order also stated that reasonable efforts shall continue to be made to reunify Child with Mother and Father.

Mother filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Mother presents one issue for our consideration: Whether the evidence was insufficient for the court to find aggravated circumstances and child abuse by clear and convincing evidence. Appellant's Brief, at 3.[5]

> The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. The appellate court reviews for abuse of discretion. In dependency proceedings the scope of review is broad.

\* \* \*

_____

[5] Mother's Rule 1925(b) statement does not raise the issue regarding sufficiency of the evidence with regard to the court's finding of child abuse. Thus, we find that claim waived and confine our review to the propriety of the court's finding of aggravated circumstances. **See** Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); **see also** Appellant's Pa.R.A.P. 1925(b) Statement ("The evidence was insufficient for the court to find aggravated circumstances by clear and convincing evidence.").

Although bound by the facts, the appellate court is not bound by the trial court's inferences, deductions, and conclusions therefrom; the appellate court must exercise independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate.

*In the Interest of J.M.*, 166 A.3d 408, 416 (Pa. Super. 2017) (citations omitted).

The Act provides that a dependency petition may allege "aggravated circumstances" relating to an allegedly dependent child. 42 Pa.C.S. § 6334(b). The Act defines "aggravated circumstances" as "[a]ny of the following circumstances":

(1) The child is in the custody of a county agency and either:

(i) the identity or whereabouts of the parents is unknown and cannot be ascertained and the parent does not claim the child within three months of the date the child was taken into custody; or

(ii) the identity or whereabouts of the parents is known and the parents have failed to maintain substantial and continuing contact with the child for a period of six months.

**(2) The child** or another child **of the parent has been the victim of** physical abuse resulting in serious bodily injury, sexual violence or **aggravated physical neglect by the parent.**

(3) The parent of the child has been convicted of any of the following offenses where the victim was a child: [list of offenses omitted].

(4) The attempt, solicitation or conspiracy to commit any of the offenses set forth in paragraph (3).

(5) The parental rights of the parent have been involuntarily terminated with respect to a child of the parent.

(6) The parent of the child is required to register as a sexual offender . . . or to register with a sexual offender registry in another jurisdiction or foreign country.

*Id.* § 6302 (emphasis added). Aggravated physical neglect is defined as "[a]ny omission in the care of a child which results in a life-threatening condition or seriously impairs the child's functioning." *Id.*

Instantly, the trial court accorded great weight to the testimony of two witnesses at the adjudicatory hearings, Dr. Mariada Elizabeth Lind and Ms. Caitlin McGilloway. Doctor Lind,[6] an expert in pediatric child abuse who is employed by St. Christopher's Hospital, testified that upon admission to St. Christopher's, Child displayed dilated pupils, respiratory depression, and nervous system depression -- all indicators of an opioid overdose. N.T. Adjudicatory/Child Abuse Hearing, 2/26/18, at 24. When Narcan was administered to Child, he responded positively. *Id.* Doctor Lind testified that the toxicologist[7] diagnosed Child with an "overdose of opioid or related narcotic," *id.* at 25, and that a possible cause for the overdose was that

---

[6] Doctor Lind did not see Child when he was initially admitted to the emergency room at St. Christopher's Hospital. However, when Child followed up at the Child Protection Program Clinic at the hospital, Dr. Lind's nurse practitioner saw him and Dr. Lind reviewed Child's case with the nurse practitioner. N.T. Adjudicatory/Child Abuse Hearing, 2/26/18, at 14.

[7] Although Child's toxicology results did show a positive result for opioids, Dr. Lind testified that often times the opioid exposure is from a synthetic drug which would not show up on a urine or drug screen. N.T. Adjudicatory/Child Abuse Hearing, 2/26/18, at 46-47.

opioids, kept in Mother and Father's bedroom nightstand, were in the soda Child was drinking on Mother and Father's bed. *Id.* at 32-33.

At the June 16, 2018 child abuse hearing, DHS investigator Caitlin McGilloway testified that she interviewed Mother at St. Christopher's Hospital on the date Child was admitted for the suspected opioid overdose. Mother told McGilloway that drugs were kept in the nightstand adjacent to the bed where Child was found unresponsive, that she was unable to explain the source of the drug prescription, and that Child often tried to take Percocet from the nightstand. McGilloway testified that she also interviewed Father on the same date and that he appeared groggy and confused, he admitted to having pills but could not explain the source, and he admitted that he gave Child soda on the day of the overdose incident. Finally, Ms. McGilloway testified that Child's home was dirty, cluttered and roach infested, that Grandfather, a DHS-indicated perpetrator of child abuse, lived in the Child's home, and that Mother wanted to remain with Father.

Based upon this testimony, the court concluded that:

Mother had failed to provide proper care and supervision for . . . Child justifying the dependency adjudication. Likewise, the testimony and documentation[8] provided to the court demonstrated that Mother (by allowing the Child to live in a filthy home, with easy access to opioids resulting in the Child's near

---

[8] These documents included multiple DHS reports, a CPS report, a hospital protection program report, toxicology consultation reports, and Father's criminal court summary and criminal dockets.

death from opioid toxidrome[9]) justified this court finding child abuse as well as aggravated circumstances.

Trial Court Opinion, 9/28/18, at 8-9. We find the record supports this determination and the court's conclusions of law were not an abuse of discretion. *See In the Interest of L.Z.*, 111 A.3d 1164, 1184-85 (Pa. Super. 2015) (evidence that child suffered injury that would not ordinarily be sustained or exist "except by reason of the act or omissions of the parent or other person responsible for the welfare of the child" sufficient to establish that parent or responsible person perpetrated abuse).

Here, Child was unresponsive when he arrived at the emergency room at St. Christopher's Hospital. He showed signs of severe respiratory distress, did not react to the administration of epinephrine, and ultimately responded positively when he was given Narcan. The emergency room report certified Child as a "near-fatality." N.T. Adjudicatory/Child Abuse Hearing, 6/18/18, at 12. As the court noted, while Father contended that this may have been "an accident," *id.* at 65, Mother and Father's actions clearly amounted to gross recklessness. *Id.* Father is considered to be an active opiate user and Mother wishes to remain with him. Both parents admit that illegal drugs are kept in the home and that their eighteen-month-old Child tries to take Percocet from their nightstand.

---

[9] A toxidrome is a clinical constellation of signs and symptoms that is very suggestive of a particular poisoning or category of intoxication. https://www.sciencedirect.com/topics/pharmacology-toxicology-and-pharmaceutical-science/toxidrome (last visited 1/9/19).

Based upon the record, the court was correct in concluding that Child's injuries occurred, in part, as a result of Mother's lack of parenting awareness while Child is in Father's care, as well as her own parental omissions. Mother's lack of supervision put Child's physical integrity at risk, resulting in a life-threatening condition. Accordingly, there was clear and convincing evidence that aggravated circumstances existed pursuant to section 6302(2).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/19