J-A08005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: PHILADELPHIA | : | |
| DEPARTMENT OF HUMAN SERVICES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2178 EDA 2020 |

Appeal from the Order Entered October 20, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0000759-2020

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, P.J.:                **FILED:  MAY 28, 2021**

One-year old A.S. suffered from opiate and cocaine poisoning while in the care of her mother and father. The Philadelphia Department of Human Services ("DHS") requested a finding that both parents were presumed to have abused the child pursuant to 23 Pa.C.S.A. § 6381(d). The trial court granted the request as to Mother but found that DHS had failed to establish by clear and convincing evidence that Father had been present when the poisoning occurred. In this appeal, DHS argues the court applied the incorrect standard when refusing to find that Father was a presumed abuser of A.S. We agree with DHS, and therefore reverse only that part of the order that found that Father was not presumed to have abused the child.

_____

* Former Justice specially assigned to the Superior Court.

Neither Mother nor Father appeared at the hearing on DHS's petition and neither presented any evidence. DHS submitted an exhibit, without objection, indicating that A.S. had tested positive for opiates at birth. *See* DHS Exh. 5, at 4. DHS social worker Shaylin Kreider[1] testified that she interviewed Mother at the hospital shortly after A.S. was admitted for treatment. *See* N.T., 10/20/2020, at 28-29. Mother told Kreider that A.S. had celebrated her first birthday two days before she was admitted to the hospital. A.S. lived with Mother and Mother's great-grandmother. *See id*., at 30, 35.

There is some dispute as to whether Father also resided in the home. Regardless, Mother told Kreider that Father visited the home on the night before A.S. was brought to the hospital to give A.S. a birthday gift. *See id*., at 29. Mother stated that Mother and Father were in the room while A.S. played on the floor. *See id*., at 29. A.S. had been eating cereal puffs when Mother noticed that she appeared to be choking. *See id*. After checking to make sure A.S. was not choking on something, Mother called for an ambulance. *See id*. The ambulance took Mother and A.S. to the hospital.

DHS also presented the testimony of pediatrician Norell Atkinson, M.D. Dr. Atkinson was accepted as an expert witness and a fact witness, as she examined A.S. in the emergency room the night she was admitted to the

---

[1] The transcript spells the social worker's name as "Cryder," while DHS, in its brief, spells the name as "Kreider." We will utilize the spelling provided by DHS in its brief.

hospital. *See id*., at 10, 12. Dr. Atkinson testified that upon arriving at the hospital, a preliminary physical screening indicated that A.S. had opiates in her system. *See id*., at 14. The hospital administered Narcan[2] to A.S., whose condition immediately improved. *See id*., at 15. This response also indicated the presence of opiates in A.S.'s system. *See id*.

A preliminary test of A.S.'s urine revealed the presence of cocaine. *See id*., at 16. A second, comprehensive urine test confirmed the presence of cocaine but also detected fentanyl[3] in A.S.'s system. *See id*. Dr. Atkinson stated that in her opinion, it was possible that the amount of opiates and cocaine in A.S.'s system could have been fatal if Narcan had not been administered. *See id*., at 19. Dr. Atkinson noted that the mixture of cocaine and fentanyl was common in illicit narcotic transactions. *See id*., at 19-20.

While Dr. Atkinson was unable to provide a precise time for when A.S. ingested fentanyl or cocaine, she explained that opiates are generally fast-acting drugs. *See id*., at 17. She therefore estimated that A.S. would have ingested the fentanyl shortly before she began exhibiting symptoms. *See id*.

---

[2] Narcan is the brand name for Naloxone. "Naloxone is a medication designed to rapidly reverse opioid overdose." https://www.drugabuse.gov/drug-topics/opioids/opioid-overdose-reversal-naloxone-narcan-evzio, last visited 5/14/2021.

[3] Fentanyl is a "synthetic opioid that is similar to morphine but is 50 to 100 times more potent." https://www.drugabuse.gov/publications/drugfacts/fentanyl, last visited 5/14/2021.

Mother informed Dr. Atkinson that Mother has a history of opiate abuse and was in a treatment program. *See id*., at 19. Mother also stated that Father had a history of drug abuse. *See id*. Father had not accompanied Mother and A.S. to the hospital after the poisoning. *See id*., at 20-21. In fact, DHS was never able to locate or contact Father. *See id*., at 32. Father's current whereabouts are unknown. *See* Dependency Petition, 7/27/2020, at ¶ 5(q).

After hearing this evidence, the trial court found that Mother "was present and responsible for the care of the Child at the time of the injury, and that Mother knowingly or recklessly caused bodily injury to the Child through her act or failure to act." Trial Court Opinion, 12/16/2020, at 15. However, the court found that DHS had not presented "clear and convincing evidence [of] Father's presence at the incident thereby making Father also responsible for the Child's care at the time of the near-fatal incident." *Id*. Therefore the court refused to apply the § 6381(d) presumption to Father.

DHS filed this timely appeal and argues that the court erred in requiring clear and convincing evidence of Father's presence in order to apply the § 6381(d) presumption. We agree with DHS that the court erred in requiring DHS to establish Father's presence at the time of the poisoning by clear and convincing evidence.

We review dependency adjudications with deference to the trial court's findings of fact, but not its conclusions of law:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted). Here, DHS argues that the court utilized the incorrect standard in assessing the evidence. This constitutes an error of law, which we review *de novo*. *See In the Interest of L.Z.*, 111 A.3d 1164, 1176 (Pa. 2015).

DHS contends the court erred by "conditioning the application of the Section 6381(d) presumption upon proof of Father's physical presence at the time of Child's injury." Appellant's Brief, at 13. There is no doubt that DHS is correct. In *L.Z.*, the Supreme Court of Pennsylvania addressed this exact issue and agreed with DHS. The § 6381(d) presumption does not require clear and convincing evidence of a parent's presence at a time of alleged neglect or abuse. *See id*., at 1184-85. Rather, the presumption "encompasses situations where the parent or responsible person is not present at the time of the injury but is nonetheless responsible due to his or her failure to provide protection for the child." *Id*., at 1184.

Arguably, the court here was focused on whether Father had any responsibility for the care of A.S., as there was conflicting evidence about his residence and contact with A.S. However, there is no indication in the record that A.S. had previously been found dependent (even though born positive for opiates), or that Father's parental rights and responsibilities had been legally

altered in any manner. As a result, Father's responsibility for A.S.'s health and welfare, as a matter of law, was as broad in scope as any parent with the right to full physical custody of his child. **See L.Z.**, at 1185 (noting that "parents are always responsible for their children, absent extenuating circumstances"). That Father possibly abdicated his responsibility does not act to save him from the application of the § 6381(d) presumption.

Order reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/28/21