J-S02032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: V.R., FATHER | : | |
| | : | No. 1884 EDA 2021 |

Appeal from the Order Entered August 26, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002273-2012

BEFORE: OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED MARCH 4, 2022**

V.R. (Father) appeals from the permanency review order regarding his minor dependent child, J.F. (Child), born October 2012, entered pursuant to the Juvenile Act.[1] In the order, *inter alia*, the trial court found Father to be a perpetrator of child abuse under subsections 6303(b.1)(5) and (8) of the Child Protective Services Law[2] (CPSL). On appeal, Father contends the trial court's determination was not supported by clear and convincing evidence. For the reasons below, we affirm.

Child is the daughter of Father and J.F. (Mother). The Philadelphia Department of Human Services (DHS) has been involved with Father and

---

[1] 42 Pa.C.S. §§ 6301-6375.

[2] 23 Pa.C.S. §§ 6301-6387.

Mother seven times since 2007, including incidents and issues involving Child's siblings prior to Child's birth. N.T., 8/26/21, at 53. When Child was just shy of two months old, DHS removed Child from the care of Mother and Father *via* an emergency custody authorization. On January 3, 2013, the trial court adjudicated Child dependent pursuant to subsection 6301(1) of the Juvenile Act. Child reunified with Father and Mother on May 15, 2015, at the age of three.

When Child was seven years old, DHS received two reports alleging abuse to Child. N.T., 8/26/21, at 44. On November 26, 2019, after Child came to school with "a black eye" and "disclosed that [Father] threw her down the stairs and hallway[,]" DHS obtained an emergency custody authorization and removed Child from the care of Father and Mother. *See* Order of Protective Custody, 11/26/19, at 3 (unpaginated). Child was placed in foster care. On February 18, 2020, the trial court adjudicated Child dependent for a second time, again pursuant to subsection 6301(1) of the Juvenile Act. Over the course of the next 18 months, the trial court conducted regular permanency review hearings pursuant to the Juvenile Act, including a permanency review hearing on August 26, 2021.

At that hearing, the trial court heard testimony to determine whether Father and/or Mother subjected Child to child abuse within the meaning of the CPSL. Father, Mother, and Child were all present and represented by counsel. Child testified *in camera* with only the trial judge and parties' counsel present.

After the trial court determined her competency, Child testified that she knew she was in court to "tell . . . everybody what happened when [she] was at home," which was, in her words, that "[Father] was beating on [her]." N.T., 8/26/21 (*in camera*), at 12.[3] With regard to the incident at issue, Child explained that her sister was on the steps and Child was "walking [too] slow." *Id.* at 13-14. Father told her to walk faster. *Id.* Although she tried to do so, Child stated Father then "threw [her] down the steps and across the hall" and he did so "[b]y [her] hair." *Id.* at 12, 14. Child landed at the bottom of the stairs on her stomach and head. *Id.* at 12-13. She recalled she was crying, her "legs hurt," and she had a bruise on her eye. *Id.* at 13-14. Child stated there were about ten steps. *Id.* at 20

When asked if she told Mother what Father had done, Child replied, "She saw it." N.T. (*in camera*) at 15. Child confirmed that Mother did "[n]othing[;]" she did not tell Father to stop, determine if Child was hurt, or give her ice or take her to a doctor. *Id.* at 16, 18. Child explained that Father did not help her either, but simply told her to "[j]ust get up." *Id.* at 18-19. Child testified she was "limping a little bit" afterwards and agreed it was "hard to walk." *Id.* at 16. Although the incident happened in the morning before Child went to

---

[3] Although the certified record contains notes of testimony from the August 26th hearing, the portion where Child testified *in camera* is omitted. Nevertheless, Father has attached the *in camera* transcript to his brief. Because no party disputes the accuracy of these notes of testimony, we may consider them. *See Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012).

school, she stated her eye did not stop hurting until she went to bed. *Id.* at 18-19. Child testified she is afraid of Father and Mother, and claimed that on other occasions, Mother hit her with a belt on her arms, legs, and butt. *Id.* at 16, 19. During the hearing, the trial court observed Child had a reddish scar underneath her eye that went from one end to the other. *Id.* at 22-23. Child confirmed the scar was from the incident. *Id.* at 22.

Following the *in camera* testimony of Child, the court also heard testimony from the following witnesses involved in the investigation of the allegations of child abuse — Philadelphia Children's Alliance forensic interviewer Kirby Gerlus, DHS intake social worker Talia Moore, Community Umbrella Agency (CUA) case manager Erica Butler, and Butler's supervisor Summer Mills.

Gerlus testified she interviewed Child in January of 2020. N.T., 8/26/21, at 33. She recounted that Child disclosed the following during the interview: Father "had pulled her by the hair and threw her to the ground],]" resulting in a bruise on the side of her nose and eye; Mother "always hit her on her legs and her behind;" and Mother had punched her in her eye because she had told on Mother, causing her eye to be hurt and swollen.[4] *Id.* at 35-36.

---

[4] Child did not indicate when Mother engaged in these acts. N.T. at 35-36. The trial court's abuse finding was based only on the incident when Father threw Child down the stairs in Mother's presence.

- 4 -

DHS social worker Moore was assigned to investigate the report of abuse. N.T. at 41. She spoke with the sources who reported the incident, Child, and both Father and Mother. *Id.* at 45. During her investigation, Moore observed markings on the right side of Child's face and "very dark" swelling to her eye and nose. *Id.* at 48. Child told Moore she sustained the injuries when Father "threw her down the steps." *Id.* at 58.

When Moore interviewed Father and Mother about Child's allegations, both stated the incident did not happen and were "real defensive." N.T. at 46, 55. Neither had an explanation for Child's injuries, although Father suggested it could have happened "when the kids were outside playing." *Id.* at 54. Father told Moore, "I'm a man. If that would've happened, she would've had more serious injuries to her." *Id.* at 47. Mother insisted she would not hurt her children or allow Father to do so, but also stated Child was a "problematic kid and was always getting in trouble." *Id.* at 55.

Moore recounted that initially Father and Mother were "okay" with DHS taking Child — and were even willing to sign over their parental rights — because Child was "causing too much trouble in their home[.]" N.T. at 47. However, the longer the case went on, Father and Mother retreated from that position. *Id.* At one point, Father and Mother threatened Moore, telling her they were going to "beat [her] up" and "get" her for "lying" and taking Child away. *Id.* at 46.

At the conclusion of the investigation, DHS determined the report of abuse was indicated[5] as to both Father and Mother. N.T. at 50. Father was determined to be the "perp by admission" because he caused Child's physical injuries and Mother was determined to be the "perp by omission" because she "was aware of the incident and she did not keep [Child] safe." *Id.* at 50-51.

CUA case manager Butler received the case file in December of 2020, and Mills became her supervisor in March of 2021. N.T. at 61. They both described having witnessed episodes of anger from Father and Mother, incidents at visits where Father and Mother intimidated Child, and Child's expressed fear of both Father and Mother. *Id.* at 61-70, 82-85.

Finally, both Father and Mother testified, and both denied that Father threw Child down the stairs or that either of them had ever hit Child with a belt. N.T. at 86-87, 92. Mother claimed she did not know what happened on the day of the incident, recalling only that Child left the house crying. *Id.* at 86. When asked if he sought medical attention for Child's cuts and bruises on her face, Father denied that Child ever had such injuries. *Id.* at 94.

At the conclusion of the hearing, the trial court stated that it found Child's testimony was "very credible" and Father and Mother were not credible. N.T. at 106-07. The court further determined there was "clear and convincing

---

[5] The CPSL provides for an indicated report of child abuse "if an investigation by the department or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists . . . ." 23 Pa.C.S. § 6303(a).

evidence to find child abuse[.]" *Id.* at 107. The court found Father to be a perpetrator of child abuse pursuant to subsections 6303(b.1)(5) and (8) of the CPSL, and Mother to be a perpetrator by omission pursuant to subsection 6303(b.1)(5).

Father filed timely a notice of appeal.[6] Both Father and the trial court complied with Pa.R.A.P. 1925. On appeal, Father raises the following two issues:

1. Whether the [t]rial [c]ourt erred by finding child abuse as regards to [Father] under 23 Pa.C.S.[ ] § 6303(b.1)(5)?

2. Whether the [t]rial [c]ourt erred by finding child abuse as regards to [Father] under 23 Pa.C.S.[ ] § 6303(b.1)(8)?

Father's Brief at 4.

We review a finding of child abuse made in a dependency case for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). As in all dependency cases, we must "accept the findings of fact and credibility determinations of the trial court if they are supported by the record," but we do not have "to accept the lower court's inferences or conclusions of law." *Id.* (citation omitted).

Although dependency proceedings are governed by the Juvenile Act, the CPSL pertains to a court's finding of child abuse. *In the Interest of X.P.*, 248 A.3d 1274, 1276 (Pa. Super. 2021) (citation omitted). A finding of child abuse must be supported by clear and convincing evidence. *Interest of*

_____

[6] Mother filed her own appeal, which is listed before this panel at 1883 EDA 2021.

***N.B.-A.***, 224 A.3d 661, 668 (Pa. 2020). "Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." ***Id.*** (citation and quotation marks omitted).

The CPSL defines child abuse, in relevant part, as follows:

**(b.1) Child abuse.** -- The term "**child abuse**" shall mean intentionally, knowingly or recklessly doing any of the following:

* * *

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

* * *

(8) Engaging in any of the following recent acts:

(i) Kicking, biting, **throwing**, burning, stabbing or cutting a child in a manner that endangers the child.

* * *

23 Pa.C.S. § 6303(b.1)(5), (8)(i) (some emphasis added).

We will address Father's claims together. Father insists that the record does not contain clear and convincing evidence that he "caused bodily harm to" Child, or that he "threw [C]hild down the steps[.]" Father's Brief at 11-13. Rather, he maintains "[t]here is contrary testimony and inconsistent statements." ***Id.*** at 13. In support of his argument, Father directs our attention to the following: (a) Child's admission that "she told a teacher and a counselor that she tripped and fell[;]" (b) Gerlus' testimony that, during the forensic interview, she did not observe any injuries to Child, and that Child did not tell her "where the steps were located, the number of steps she fell down

[or] when the incident happened[,]" however, at the hearing Child testified she fell down ten steps; (c) Moore's testimony that one of Child's siblings stated Child "was running outside and fell[;]" and (d) Mother's testimony that "she did not observe [F]ather cause bodily injury to" Child. *Id.* at 11-13; N.T. (*in camera*) at 20-21; N.T. at 38-40, 56-57, 86-87. Father contends this testimony demonstrates conflicts between testimony of witnesses and inconsistencies in Child's statements at different times, which caused the evidence to fall short of clear and convincing. *See* Father's Brief at 11-13.

At its core, Father's argument asks us to reassess the credibility of the witnesses at the permanency hearing and reweigh the testimony in his favor. That is not our function on appeal. As an appellate court, we are required to "accept the findings of fact and credibility determinations of the trial court if they are supported by the record[.]" *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). Upon our review, we conclude the court's findings are supported by the record.

Here, contrary to Father's assertions, Child has been steadfast in her allegation that Father threw her down the stairs, as demonstrated by the information in the initial reports to DHS, what she told the DHS investigator, her disclosures in the forensic interview, and her testimony at the hearing. *See* Order of Protective Custody, 11/26/19, at 3 (unpaginated); N.T. at 35, 58; N.T. (*in camera*) at 12-13, 17. The fact that, during her forensic interview, Child — who at the time was seven years old — did not mention the location and number of steps does little to diminish her explicit testimony that Father

- 9 -

threw her down the steps by her hair while Mother observed. Additionally, to the extent Child's testimony indicated that at one point she told her teacher and counselor that she had tripped — similar to what her sibling told the DHS investigator — does not mean that the trial court abused its discretion by finding Child's testimony about the abuse to be credible. Moore testified she had some concerns Child's siblings were coached. N.T. at 48. Moreover, Father's reliance on Gerlus' testimony that she did not observe any injuries to Child during the forensic interview is misplaced. Rather, the Child Advocate asked Gerlus: "When you saw [Child], did she have any visible marks or bruises on her face?" N.T. at 38. Gerlus replied simply, "Not that I recall." *Id.* We do not consider this testimony to be supportive of Father's contention that Child lied about the abuse. In any event, the record contains other competent evidence indicating that Child did in fact have injuries to her face. The original reports came in due to observations of injuries, followed by an investigation where the intake worker observed the injuries. N.T. at 44-45, 48. In fact, the trial court judge directly observed a mark on Child's face that was still visible a year and one-half later. *Id.* at 22. Child testified regarding her injuries as well. N.T. (*in camera*) at 13-14.

We conclude the trial court's finding that Father perpetrated abuse upon Child by throwing her down the stairs by her hair, causing injuries to her face, is well supported by Child's testimony and the testimony of the professionals involved in the case. Indeed, the trial court explicitly found Child's testimony credible and Father and Mother's testimony incredible. N.T. at 106-07. Thus,

we conclude the trial court did not err or abuse its discretion by finding Father

to be a perpetrator of child abuse pursuant to 23 Pa.C.S. § 6303(b.1)(5) and

(8).[7]

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/4/2022

_____

[7] To the extent that, in its opinion, the trial court discussed the evidentiary presumption of child abuse permissible under 23 Pa.C.S. § 6381(d), we conclude that subsection has no applicability under the facts of this case. Rather, subsection 6381(d) allows "for the possibility of **identifying** the perpetrator of abuse based on *prima facie* evidence in cases where the abuse is 'of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child.'" ***In re L.Z.***, 111 A.3d at 1184-85 (emphasis added), *quoting* 23 Pa.C.S. § 6381(d). Here, Child identified Father as the perpetrator of her abuse. Nevertheless, despite its discussion of the presumption in its opinion, the trial court concluded: "DHS met its statutory burden by **clear and convincing evidence** regarding the finding that Child's injuries were the result of child abuse pursuant to [subsection] 6303(b.1), and that Father was the perpetrator of child abuse pursuant to [subsections] 6303(b.1)(5) and (8)." Trial Ct. Op., 10/26/21, at 10 (emphasis added). ***See also*** N.T. at 107 ("[T]he Court does find there is clear and convincing evidence to find child abuse as to [F]ather . . . as the perpetrator[.]").