J-S02031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.F., MOTHER | : | |
| | : | No. 1883 EDA 2021 |

Appeal from the Order Entered August 26, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002273-2012

BEFORE:  OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED MARCH 4, 2022**

J.F. (Mother) appeals from the permanency review order regarding her minor dependent child, J.F. (Child), born October 2012, entered pursuant to the Juvenile Act.[1]  In the order, *inter alia*, the trial court found Mother to be a perpetrator of child abuse by omission under subsection 6303(b.1)(5)[2] of the Child Protective Services Law[3] (CPSL).  On appeal, Mother contends the trial

_____

[1] 42 Pa.C.S. §§ 6301-6375.

[2] The trial court indicated in its Pa.R.A.P. 1925(a) opinion that it inadvertently listed subsection 6303(b.1)(8) on the order as to Mother, and the order should have listed subsection 6303(b.1)(5) instead.  Trial Court Opinion, 10/26/21, at 4.  The certified record sent to this Court did not contain an amended order. If the trial court has not done so already, we direct the trial court to issue an amended order correcting its mistake.

[3] 23 Pa.C.S. §§ 6301-6387.

court's determination was not supported by clear and convincing evidence. For the reasons below, we affirm.

Child is the daughter of Mother and V.R. (Father). The Philadelphia Department of Human Services (DHS) has been involved with Mother and Father seven times since 2007, including incidents and issues involving Child's siblings prior to Child's birth. N.T., 8/26/21, at 53. When Child was just shy of two months old, DHS removed Child from the care of Mother and Father *via* an emergency custody authorization. On January 3, 2013, the trial court adjudicated Child dependent pursuant to subsection 6301(1) of the Juvenile Act. Child reunified with Mother and Father on May 15, 2015, at the age of three.

When Child was seven years old, DHS received two reports alleging abuse to Child. N.T., 8/26/21, at 44. On November 26, 2019, after Child came to school with "a black eye" and "disclosed that [Father] threw her down the stairs and hallway[,]" DHS obtained an emergency custody authorization and removed Child from the care of Mother and Father. **See** Order of Protective Custody, 11/26/19, at 3 (unpaginated). Child was placed in foster care. On February 18, 2020, the trial court adjudicated Child dependent for a second time, again pursuant to subsection 6301(1) of the Juvenile Act. Over the course of the next 18 months, the trial court conducted regular permanency review hearings pursuant to the Juvenile Act, including a permanency review hearing on August 26, 2021.

At that hearing, the trial court heard testimony to determine whether Father and/or Mother subjected Child to child abuse within the meaning of the CPSL. Mother, Father, and Child were all present and represented by counsel. Child testified *in camera* with only the trial judge and parties' counsel present.

After the trial court determined her competency, Child testified that she knew she was in court to "tell . . . everybody what happened when [she] was at home," which was, in her words, that "[Father] was beating on [her]." N.T., 8/26/21 (*in camera*), at 12.[4] With regard to the incident at issue, Child explained that her sister was on the steps and Child was "walking [too] slow." *Id.* at 13-14. Father told her to walk faster. *Id.* Although she tried to do so, Child stated Father then "threw [her] down the steps and across the hall" and he did so "[b]y [her] hair." *Id.* at 12, 14. Child landed at the bottom of the stairs on her stomach and head. *Id.* at 12-13. She recalled she was crying, her "legs hurt," and she had a bruise on her eye. *Id.* at 13-14. Child stated there were about ten steps. *Id.* at 20

When asked if she told Mother what Father had done, Child replied, "She saw it." N.T. (*in camera*) at 15. Child confirmed that Mother did "[n]othing[;]" she did not tell Father to stop, determine if Child was hurt, or give her ice or

---

[4] Although the certified record contains notes of testimony from the August 26th hearing, the portion where Child testified *in camera* is omitted. Nevertheless, Mother has attached the *in camera* transcript to her brief. Because no party disputes the accuracy of these notes of testimony, we may consider them. *See Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012).

take her to a doctor. *Id.* at 16, 18. Child explained that Father did not help her either, but simply told her to "[j]ust get up." *Id.* at 18-19. Child testified she was "limping a little bit" afterwards and agreed it was "hard to walk." *Id.* at 16. Although the incident happened in the morning before Child went to school, she stated her eye did not stop hurting until she went to bed. *Id.* at 18-19. Child testified she is afraid of Mother and Father, and claimed that on other occasions, Mother hit her with a belt on her arms, legs, and butt. *Id.* at 16, 19. During the hearing, the trial court observed Child had a reddish scar underneath her eye that went from one end to the other. *Id.* at 22-23. Child confirmed the scar was from the incident. *Id.* at 22.

Following the *in camera* testimony of Child, the court also heard testimony from the following witnesses involved in the investigation of the allegations of child abuse — Philadelphia Children's Alliance forensic interviewer Kirby Gerlus, DHS intake social worker Talia Moore, Community Umbrella Agency (CUA) case manager Erica Butler, and Butler's supervisor Summer Mills.

Gerlus testified that she interviewed Child in January of 2020. N.T., 8/26/21, at 33. She recounted that Child disclosed the following during the interview: Father "had pulled her by the hair and threw her to the ground],]" resulting in a bruise on the side of her nose and eye; Mother "always hit her on her legs and her behind;" and Mother had punched her in her eye because

she had told on Mother, causing her eye to be hurt and swollen.[5] *Id.* at 35-36.

DHS social worker Moore was assigned to investigate the report of abuse. N.T. at 41. She spoke with the sources who reported the incident, Child, and both Mother and Father. *Id.* at 45. During her investigation, Moore observed markings on the right side of Child's face and "very dark" swelling to her eye and nose. *Id.* at 48. Child told Moore she sustained the injuries when Father "threw her down the steps." *Id.* at 58.

When Moore interviewed Mother and Father about Child's allegations, both stated the incident did not happen and were "real defensive." N.T. at 46, 55. Neither had an explanation for Child's injuries, although Father suggested it could have happened "when the kids were outside playing." *Id.* at 54. Father told Moore, "I'm a man. If that would've happened, she would've had more serious injuries to her." *Id.* at 47. Mother insisted she would not hurt her children or allow Father to do so, but also stated Child was a "problematic kid and was always getting in trouble." *Id.* at 55.

Moore recounted that initially Mother and Father were "okay" with DHS taking Child — and were even willing to sign over their parental rights — because Child was "causing too much trouble in their home[.]" N.T. at 47.

_____

[5] Child did not indicate when Mother engaged in these acts. N.T. at 35-36. The trial court's abuse finding was based only on the incident when Father threw Child down the stairs in Mother's presence.

However, the longer the case went on, Mother and Father retreated from that position. *Id.* At one point, Mother and Father threatened Moore, telling her they were going to "beat [her] up" and "get" her for "lying" and taking Child away. *Id.* at 46.

At the conclusion of the investigation, DHS determined the report of abuse was indicated[6] as to both Father and Mother. N.T. at 50. Father was determined to be the "perp by admission" because he caused Child's physical injuries and Mother was determined to be the "perp by omission" because she "was aware of the incident and she did not keep [Child] safe." *Id.* at 50-51.

CUA case manager Butler received the case file in December of 2020, and Mills became her supervisor in March of 2021. N.T. at 61. They both described having witnessed episodes of anger from Mother and Father, incidents at visits where Mother and Father intimidated Child, and Child's expressed fear of both Mother and Father. *Id.* at 61-70, 82-85.

Finally, both Mother and Father testified, and both denied that Father threw Child down the stairs or that either of them had ever hit Child with a belt. N.T. at 86-87, 92. Mother claimed she did not know what happened on the day of the incident, recalling only that Child left the house crying. *Id.* at

---

[6] The CPSL provides for an indicated report of child abuse "if an investigation by the department or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists . . . ." 23 Pa.C.S. § 6303(a).

86. When asked if he sought medical attention for Child's cuts and bruises on her face, Father denied that Child ever had such injuries. *Id.* at 94.

At the conclusion of the hearing, the trial court stated that it found that Child's testimony was "very credible" and Mother and Father were not credible. N.T. at 106-07. The court further determined there was "clear and convincing evidence to find child abuse[.]" *Id.* at 107. The court found Mother to be a perpetrator by omission pursuant to subsection 6303(b.1)(5)[7] of the CPSL, and Father to be a perpetrator of child abuse pursuant to subsections 6303(b.1)(5) and (8).

Mother filed timely a notice of appeal.[8] Both Mother and the trial court complied with Pa.R.A.P. 1925. On appeal, Mother raises one issue:

> Whether the trial court abused its discretion when it found Mother a perpetrator of child abuse by omission pursuant to § 6303(b.1)(5) of the [CPSL] where such determination was not supported by clear and convincing evidence?

Mother's Brief at 4 (unnecessary capitalization omitted).

We review a finding of child abuse made in a dependency case for an abuse of discretion. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). As in all dependency cases, we must "accept the findings of fact and credibility determinations of the trial court if they are supported by the record," but we

---

[7] As noted *supra*, the permanency order mistakenly indicates Mother was a perpetrator of abuse pursuant to subsection 6303(b.1)(8). *See* n.1 *supra*.

[8] Father filed his own appeal, which is listed before this panel at 1884 EDA 2021.

- 7 -

do not have "to accept the lower court's inferences or conclusions of law." *Id.* (citation omitted).

Although dependency proceedings are governed by the Juvenile Act, the CPSL pertains to a court's finding of child abuse. *In the Interest of X.P.*, 248 A.3d 1274, 1276 (Pa. Super. 2021) (citation omitted). A finding of child abuse must be supported by clear and convincing evidence. *Interest of N.B.-A.*, 224 A.3d 661, 668 (Pa. 2020). "Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

Although the fact that a child suffered abuse must be proven by clear and convincing evidence, in certain circumstances subsection 6381(d) of the CPSL permits the **identity** of the perpetrator to be established though *prima facie* evidence. *Id.* Subsection 6381(d) allows "for the possibility of identifying the perpetrator of abuse based on *prima facie* evidence in cases where the abuse is 'of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child.'" *In re L.Z.*, 111 A.3d at 1184-85, *quoting* 23 Pa.C.S. § 6381(d). Our Supreme Court has described subsection 6381(d) as a "very limited exception" to the "more stringent evidentiary standards" typically applicable to findings of child abuse. *Id.* at 1184. The legislature created this presumption to protect children from abuse and avoid

the "evidentiary conundrum" where an agency can easily prove abuse from the type and nature of injuries, but cannot identify which of the multiple caregivers responsible for the care of the child committed the act. *Id.* at 1185. Thus,

> evidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

*Id.* (footnote omitted).

The CPSL defines child abuse, in relevant part, as follows:

> **(b.1) Child abuse.** -- The term "**child abuse**" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> * * *
>
> (5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.
>
> * * *

23 Pa.C.S. § 6303(b.1)(5).

On appeal, Mother does not contest the nature or cause of Child's injuries or the trial court's finding that **Father** inflicted the abuse. Rather, she contends that the trial court erred by applying the presumption set forth at

subsection 6381(d) to determine her complicity. Mother's Brief at 10. Mother argues the presumption only applies when there are multiple caregivers and the identity of the perpetrator is **unknown** —not, as here, where the Child identified Father as the person who caused the injuries. *Id.* She further asserts the presumption is inapplicable because DHS did not prove Child's injuries were of the type that could be sustained only by abuse. *Id.*

Moreover, Mother argues the trial court's finding that she is a perpetrator of child abuse by omission pursuant to subsection 6303(b.1)(5) is not supported by clear and convincing evidence. Mother's Brief at 10. Relying on **N.B.-A.**, *supra*, she argues a parent cannot be held responsible for abuse committed by others if the parent did not know or have reason to know the child was in danger of abuse. Mother's Brief at 10. Here, Mother insists "DHS presented no evidence that Mother knew or should have known that Father would abuse . . . Child." *Id.*

The trial court offered the following analysis in its Pa.R.A.P. 1925(a) opinion in support of its finding of abuse. The court found "clear and convincing evidence that Child's injuries were the result of child abuse" based upon Child's consistent and credible account of how she sustained the injuries. Trial Ct. Op., 10/26/21, at 9. The trial court further indicated "there was *prima facie* evidence that Mother is a perpetrator of child abuse by omission under 23 Pa.C.S.[ ] § 6303(b.1)(5)." *Id.* According to the trial court, DHS presented evidence demonstrating that "Child's injuries were neither accidental nor self-

inflicted" and only Mother and Father were caregivers at the time. *Id.* Further, the court determined "Mother failed to rebut the presumption that she was a caregiver and her omission [led] to Child's injuries." *Id.*

Nevertheless, despite its apparent reliance on the subsection 6381(d) presumption, the court concluded:

> DHS met its statutory burden **by clear and convincing evidence regarding the finding** that Child's injuries were the result of child abuse pursuant to 23 Pa.C.S.[ ] 6303(b.1), **and that Mother was the perpetrator of child abuse pursuant to 23 Pa.C.S.[ ] § 6303(b.1)(5)**.

Trial Ct. Op. at 10 (emphasis added). This is consistent with the trial court's findings on the record at the end of the permanency review hearing, wherein it explicitly concluded "there [was] **clear and convincing evidence** to find child abuse as to [F]ather . . . as the perpetrator [and as] **to [M]other**, as [a]n omission." N.T., 8/26/21, at 107 (emphasis added). The court further commented "[a]s to [M]other, there is always a parental duty that extends beyond the mere restraint of [M]other abusing a child, rather, there also exists a duty to protect a child from harm that others may inflict, including another parent." *Id.* (emphasis added). Thus, we need not address Mother's arguments that the trial court erred by applying the subsection 6381(d) presumption because the trial court also found there was clear and convincing

evidence that Mother perpetrated abuse by omission.[9]  *See* Mother's Brief at 10.

Upon our review of the record, we conclude the court's finding that Mother was a perpetrator of abuse by omission is supported by competent evidence in the record.  Child's testimony — which the trial court explicitly found to be credible[10] — clearly and convincingly establishes that Father threw her down ten steps and across a hall by grabbing her hair, causing her to suffer injuries under her eye, around her face, and on her legs, and Mother was present but did not intervene.  N.T. (*in camera*) at 12-23.

Given Child's description of the incident, the trial court did not abuse its discretion by concluding that Mother could have and should have done something to protect Child.  Instead, Mother said and did nothing while Father was abusing Child.  N.T. (*in camera*) at 15-16, 18.  After Child landed at the bottom of the stairs on her stomach and head, Mother still did nothing.  *Id.*

---

[9] Regarding Mother's contention that the presumption cannot apply to her because the trial court found Father to be the perpetrator, we observe our Supreme Court recently was presented with a similar argument but decided the case on other grounds.  *See N.B.-A.*, 224 A.3d at 675 ("In light of our determination, we need not address the parties' arguments with regard to whether the fact that the perpetrator of the abuse was identified precludes application of the Section 6381(d) presumption.").  Similarly, we decline to address this issue in light of our disposition.

[10] *See* N.T. at 107-08; Trial Ct. Op. at 8-9.

at 16. She also did not check on Child even though Child was crying, bruised, and limping, or provide any aid for her injuries. *Id.* at 16-18.

Although Mother claimed all she knew was that Child left her house that morning crying, the trial court did not find Mother's testimony to be credible. *Id.* at 86, 107. Mother denied ever seeing Father "throw [Child] down the steps" and offered no explanation for Child's injuries, even though the mark on Child's eye was still apparent at hearing a year and one-half later. *See id.* at 46, 54, 86-87. Under these circumstances, we conclude the trial court did not err or abuse its discretion by finding DHS proved by clear and convincing evidence that Mother intentionally, knowingly, or recklessly created a reasonable likelihood of bodily injury to Child by failing to act.

The case Mother relies upon, *Interest of N.B.-A.*, is distinguishable. First, *N.B.-A.* involved sexual abuse that occurred outside the mother's presence. *See N.B.-A.*, 224 A.3d at 663 (six-year-old daughter was diagnosed with sexually transmitted disease). Thus, in that case, it was crucial to determine whether the mother knew or should have known that the child was being sexually abused, or that the perpetrator posed a risk to the child which the mother ignored. *Id.* Here, however, there is no issue as to whether Mother knew or should have known Father was abusing Child, because according to Child's account, **Mother witnessed the abuse**. *See* N.T. (*in camera*) at 15.

Mother's failure to either attempt to prevent the abuse, or render aid to Child following the abuse, established "child abuse" by omission under the CPSL. *See* 23 Pa.C.S. § 6303(b.1)(5). The fact that Mother witnessed Father grab Child by the hair and throw her down the steps and did nothing, was sufficient to establish that Mother's failure to act intentionally, knowingly or recklessly created a "reasonable likelihood of bodily injury" to Child. ***Id.*** Therefore, Mother's arguments afford her no relief.

Based on the foregoing, we conclude the trial court did not err or abuse its discretion by finding Mother to be a perpetrator of child abuse by omission pursuant to 23 Pa.C.S. § 6303(b.1)(5). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2022