J-S44030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: BUCKS COUNTY CHILDREN AND YOUTH SOCIAL SERVICES AGENCY | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2430 EDA 2025 |

Appeal from the Order Entered August 28, 2025
In the Court of Common Pleas of Bucks County Juvenile Division at
No(s):  CP-09-DP-0000009-2025

BEFORE:  LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                      **FILED MARCH 12, 2026**

Appellant, Bucks County Children and Youth Social Services Agency ("the Agency"), appeals from the August 28, 2025 order entered in the Bucks County Court of Common Pleas that denied the Agency's petition to make a finding of child abuse and adjudicate then-one-year-old R.R. ("Child") dependent.  Upon careful review, we affirm on the basis of the trial court's opinion.

In its opinion, the trial court set forth the relevant factual and procedural history of this case, including summaries of testimony, and we adopt its detailed recitation for purposes of this appeal.  *See* Trial Ct. Op., 10/20/25, at 1-41.   In sum, P.E. ("Mother") and T.F. ("Father") are Child's parents. Mother was 15 years old and Father was 19 years old when Child was born. Mother currently lives with her parents ("Maternal Grandparents"), her older brother ("Maternal Uncle"), and Child.  Mother attends Lakeside Girls Academy

high school and Child attends the affiliated daycare. Child receives early intervention services.

Mother has a history of trauma and was sexually assaulted by both Father and Maternal Uncle. The Agency has been involved with Mother since June 2018 after receiving a report that Maternal Uncle repeatedly sexually abused Mother when she was approximately nine or ten years old. The Agency indicated Maternal Uncle as a perpetrator of Child Abuse against Mother and placed him at Mathom House until he turned 18 years old in January 2022 and returned home. Maternal Uncle is not permitted to be around Child unsupervised. In June 2024, Father pleaded guilty to Indecent Assault Forcible Compulsion and Indecent Assault without Consent of Other where Mother is the victim.[1] Father is likewise not permitted to be around Child unsupervised.

To address her trauma, Mother has engaged in extensive and ongoing mental health treatment including outpatient therapy and medication management. She also participates in a parenting program at her school.

On November 21, 2024, after school, Mother picked Child up from daycare and brought her home. Once they were home, Child had a supervised visit with Father in the home during which Child was crying. After the visit, Mother changed Child's diaper and noticed marks on Child's legs. Mother consulted Maternal Grandmother about the marks, who advised Mother to

_____

[1] Father was sentenced to probation for five years and is required to register under the Sexual Offender Registration and Notification Act for 25 years.

keep an eye on them. Mother continued to have concerns and uploaded a picture of the marks to "Google Lens," a computer program that informed Mother the marks looked like eczema, an inflammatory skin condition. Mother once again consulted with Maternal Grandmother, who advised her to put antibiotic cream on the marks, which Mother did. The next day, November 22, 2024, when Mother dropped Child off at daycare, she informed the daycare workers about the marks so that they could monitor them.

On the same day, the Agency received a Child Protective Services ("CPS") referral that then-9-month-old Child had unexplained marks on her thighs. After school, the Agency met Mother at her home and transported Mother and Child to St. Christopher's Hospital for Children for evaluation. Mother subsequently agreed to a safety plan, and Child stayed with family friends while the Agency further investigated the allegations.

On December 20, 2024, the Agency indicated Mother as a perpetrator of physical abuse to Child. On February 12, 2025, the Agency filed a dependency petition alleging varying concerns, including that Child had unexplained marks on her thighs and that Mother did not understand the extent of her own trauma and its impact on her parenting.[2] On May 15, 2025,

---

[2] The petition also averred that Child had several instances of unexplained bleeding from her ears. However, the trial court found that "the Agency effectively abandoned the issue during the course of the hearings." Trial Ct. Op. at 3. The court further found, "it became abundantly clear that Child has had an underlying medical condition that has resulted in hearing loss and the need for ongoing treatment, that Mother did not do anything—or fail to do
*(Footnote Continued Next Page)*

the Agency amended the petition and included a Motion for Finding of Aggravated Circumstances and allegations that the Child was a victim of child abuse as defined at 23 Pa.C.S. § 6303(b.1).

The court held an adjudicatory hearing over the course of six days. The Agency presented testimony from Roselyn S. Watkins, Ph.D., Diane Siveter, Agency case worker; Michelle Dominguez, M.D., expert in the field of child abuse pediatrics; Patricia Farraday, Program Director from Lakeside Girls Academy; Father; Mother; and Mary Gebler, therapeutic intensive family counselor at Diakon Children Family and Community Ministries. Mother presented testimony from Rebecca Lorello, pediatric nurse practitioner; William Parkes, M.D., Ear, Nose, and Throat ("ENT") specialist; Emily Nusbickel, pediatric audiologist; Kara Sharp, L.P.C., director of outpatient services at Lenape Valley Foundation; Jesse Hackell, M.D., expert in the field of general pediatrics; Terry O'Hara, Ph.D., expert in the field of psychology; Mother; and Maternal Grandmother. Additionally, the court heard from Child's guardian ad litem ("GAL"), who opposed the Agency's petition.

In weighing the testimony, the trial court found Dr. Hackell's testimony—that Child's injuries were not caused by abuse and, rather, were most likely post-inflammatory hyperpigmentation from a skin rash—more credible than Dr. Dominguez's testimony that the marks were clustered

_____

anything—to cause this condition, and that Mother has consistently responded appropriately to ensure that the Child receives the appropriate medical care." ***Id.***

bruising consistent with child physical abuse. Trial Ct. Op. at 4-5, 39, 50-53. The court also credited Mother's testimony that she did not cause the marks on Child's thighs. *Id.* at 53. Finally, the court credited Ms. Siveter's testimony that Mother is compliant with outpatient therapy, medication management, and a parenting program through her school. *Id.* at 54-55. Moreover, the court placed great weight on Ms. Siveter's testimony that Mother is Child's main caregiver, is diligent with Child's medical appointments, follows all recommendations from Child's early intervention services, and cooperates with the Agency. *Id.*

At the conclusion of the hearing, the court denied the Agency's dependency petition and declined to make a finding of child abuse pursuant to Section 6303.

The Agency timely appealed. Both the Agency and the trial court complied with Pa.R.A.P. 1925.

The Agency raises the following issues on appeal.

1. Did the trial court err as a matter of law and abuse its discretion when it declined to make a finding that the child's injury was child abuse as defined in 23 Pa.C.S. [§] 6303(b.1)(1) and (5)?

2. Did the trial court err as a matter of law and abuse its discretion when it declined to make a finding of child abuse, where sufficient evidence was introduced to demonstrate that the child suffered abuse of such nature that would ordinarily not be sustained or exist except by the acts or omissions of mother, the primary caregiver of the child, triggering the evidentiary presumption in Section 6381(d) of the Child Protective Services Law, and competent, substantial evidence was not presented by mother to rebut the presumption?

3. Did the trial court err as a matter of law and abuse its discretion when it denied [the Agency]'s petition for dependency, despite clear and convincing evidence that the child was without proper parental care pursuant to 42 Pa.C.S. [§] 6302(1)?

Appellant's Br. at 4.

We review findings in a dependency case for an abuse of discretion. ***In re L.Z.***, 111 A.3d 1164, 1174 (Pa. 2015). This Court is required to accept the findings of fact and credibility determinations of the trial court if the record supports them but is not required to accept the lower court's inferences or conclusions of law. ***Id.*** "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***Interest of T.G.***, 208 A.3d 487, 490 (Pa. Super. 2019) (citation omitted). Notably, "we are not in a position to reweigh the evidence and the credibility determinations of the trial court." ***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010).

To adjudicate a child dependent, a trial court must determine by clear and convincing evidence that the child, *inter alia*, "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." ***In re A.B.***, 63 A.3d 345, 349 (Pa. Super. 2013) (quoting 42 Pa.C.S. § 6302). Further, "[a] determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]" 42 Pa.C.S. § 6302. Clear and convincing evidence is defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts

to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *A.B.*, 63 A.3d at 349 (citation omitted). The overarching purpose of the Juvenile Act is "to preserve the unity of the family whenever possible[.]" *Id.* (quoting 42 Pa.C.S. § 6301(b)(1)). Accordingly, "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." *Id.* (citation omitted). This Court has defined "proper parental care" as care which is "geared to the particularized needs of the child and[,] at a minimum, is likely to prevent serious injury to the child." *Id.* (citation omitted).

When adjudicating a child dependent, a court may find a parent or caregiver to be the perpetrator of child abuse as defined by the Child Protective Services Law ("CPSL"). *Interest of C.B.*, 264 A.3d 761, 770 (Pa. Super. 2021) (*en banc*). The CPSL defines "child abuse" to include, in relevant part, "intentionally, knowingly or recklessly [c]ausing bodily injury to a child through any recent act or failure to act" or "[c]reating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6303(b.1)(1), (5). In turn, the CPSL defines "bodily injury" to include "[i]impairment of physical condition or substantial pain." *Id.* at § 6303(a).

The petitioning party must demonstrate the existence of child abuse by clear and convincing evidence. *L.Z.*, 111 A.3d at 1174. However, "the identity of the abuser need only be established through *prima facie* evidence in certain situations[.]" *Id*. Specifically, the CPSL provides "[e]vidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or

- 7 -

exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child." 23 Pa.C.S. § 6381(d). "As commonly understood, *prima facie* evidence is such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." **L.Z.**, 111 A.3d at 1185 (quoting *Black's Law Dictionary* 825 (6th ed. abridged 1991)). Accordingly, Section 6381 creates a rebuttable presumption, and "[t]he parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive." **Id.** "The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the [] agency and the rebuttal of the parent or responsible person." **Id.**

Here, the Agency avers that the dependency court abused its discretion when it declined to make a finding of child abuse pursuant to Section 6303(b.1), declined to apply the evidentiary presumption in Section 6381(d), and denied the Agency's dependency petition. Appellant's Br. at 4. After a thorough review of the record, the briefs of the parties, and the comprehensive and well-reasoned opinion of the trial court, we conclude that the Agency's claims fail. Accordingly, we affirm on the basis of the trial court's

opinion. **See** Trial Ct. Op. at 1-56 ((1) weighing the opinions of the competing experts and finding Dr. Hackell's testimony that Child's injuries were not caused by abuse to be more credible than Dr. Dominguez's testimony that the marks were consistent with child abuse; (2) concluding that the Agency did not prove by clear and convincing evidence that Child suffered child abuse as defined in Section 6303(b.1); (3) concluding that, without a finding of child abuse, the evidentiary presumption of Section 6381(d) did not apply; and (4) concluding that the Agency failed to present clear and convincing evidence that Child is without proper parental care and control).

In sum, the trial court did not abuse its discretion when it declined to make a finding of child abuse pursuant to Section 6303(b.1) and denied the Agency's dependency petition. The record supports the trial court's findings, and we are not permitted to usurp the court's credibility determinations or reweigh the evidence. All parties are instructed to attach a copy of the trial court's October 20, 2025 redacted opinion to all future filings.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2026